LIEFF CABRASER HEIMANN
   & BERNSTEIN, LLP
Jonathan D. Selbin (State Bar No. 170222)
jselbin@lchb.com
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone: (212) 355-9500
Facsimile: (212) 355-9592

LIEFF CABRASER HEIMANN
   & BERNSTEIN, LLP
Daniel M. Hutchinson (State Bar No. 239458)
dhutchinson@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: 415.956.1000
Facsimile: 415.956.1008

MEYER WILSON CO., LPA
Matthew R. Wilson (admitted *pro hac vice*)
mwilson@meyerwilson.com
Daniel R. Freytag (admitted *pro hac vice*)
dfreytag@meyerwilson.com
1320 Dublin Road, Ste. 100
Columbus, OH 43215
Telephone: (614) 224-6000
Facsimile: (614) 224-6066

MEYER WILSON CO., LPA
Marnie C. Lambert (State Bar No. 165019)
mlambert@meyerwilson.com
2029 Century Park East, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 623-4562
Facsimile: (310) 772-2293

Attorneys for Plaintiff
~~Joshua D. Brown and the Proposed Classes~~



CLERK, U.S. DISTRICT COURT

NOV 28 2012

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

JOSHUA D. BROWN, on behalf of himself and all others similarly situated,

　　　　　Plaintiffs,

v.

DIRECTV, LLC; THE CMI GROUP, INC., THE CMI GROUP GP, LLC, and CREDIT MANAGEMENT, LP.,

　　　　　Defendants.

Case No. CV 12-8382-DMG (Ex)

**FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF PURSUANT TO 47 U.S.C. § 227, ET SEQ. (TELEPHONE CONSUMER PROTECTION ACT)**

CLASS ACTION

JURY TRIAL DEMANDED

Plaintiff Joshua D. Brown, individually and on behalf of all others similarly situated, makes the following allegations and claims against Defendants DirecTV, LLC, The CMI Group, Inc., The CMI Group GP, LLC, and Credit Management, LP (collectively, "Defendants"), upon his personal knowledge, the investigation of his counsel, and information and belief as follows:

**INTRODUCTION**

1.      Plaintiff brings this action against Defendants for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"), and the Federal Communication Commission rules promulgated thereunder,47 C.F.R. §64.1200 ("Rules"), by Defendants and their present, former, and/or future direct and indirect predecessors, parent companies, subsidiaries, affiliates, agents, and/or related entities.  Defendants have violated the TCPA and the Rules by making telephone calls to Plaintiff and others similarly situated on their cellular telephones with the use of "an artificial or prerecorded voice" (collectively, "Voice") as described in 47 U.S.C. § 227(b)(1)(A) and/or an "automatic telephone dialing system" ("ATDS"), as defined by 47 U.S.C. § 227(a)(1), without their prior express consent within the meaning of the TCPA and the Rules.

2.      On December 12, 2005, the United States Department of Justice, acting on behalf of the Federal Trade Commission ("FTC" or "Commission"), filed a complaint for civil penalties and injunctive relief against Defendant DirecTV, LLC ("DirecTV") and telemarketing companies it hired to promote DirecTV programming for violating the TCPA, the FTC Act, and the Do Not Call provisions of the Commission's Telemarketing Sales Rule. *See* Complaint, *United States v. DirecTV, Inc., et al.*, No. 05-1211 (C.D. Cal. Dec. 12, 2005).  According to the Complaint, DirecTV engaged several telemarketing firms and individuals that, "acting on behalf of DirecTV," engaged in telemarketing conduct that violated the TCPA.  The Complaint states that DirecTV either knew or consciously avoided knowing the methods by which their telemarketers were promoting DirecTV's programming.

3.      Two days later, on December 14, 2005, DirecTV and its telemarketers settled the FTC charges against them for $5,335,000, which was, at that time, the largest penalty announced by the FTC for violation of a consumer protection law. DirecTV also entered into a permanent injunction requiring it, among other things,

FIRST AMENDED COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF

1  to monitor all telemarketing campaigns conducted by its authorized telemarketers to
2  confirm that "[n]ot more than three percent (3   ) of telemarketing calls answered
3  by a person, measured per day per calling campaign, are being connected to a pre-
4  recorded message in lieu of a live sales call."

5       4.     Notwithstanding these prior violations of the TCPA and the FTC
6  settlement, Defendants have violated the TCPA and the Rules by making calls to
7  Plaintiff and others similarly situated on their cellular telephones with the use of a
8  Voice  and/or an ATDS  without their prior express consent within the meaning of
9  the TCPA.

10      5.     Plaintiff brings this action for damages, and other legal and equitable
11 remedies, resulting from Defendants' conduct in violation of the TCPA and the
12 Rules.

13                        **JURISDICTION AND VENUE**

14      6.     Pursuant to 28 U.S.C. § 1331, this Court has original subject matter
15 jurisdiction over the claims set forth herein arising under the TCPA and the Rules.

16      7.     In addition, this matter in controversy exceeds $5,000,000, as each
17 member of the proposed Class of at least tens of thousands is entitled to up to
18 $1,500.00 in statutory damages for each call that violated the TCPA and the Rules.
19 Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. § 1332(d)(2).
20 Further, Plaintiff alleges a national Class, which will result in at least one Class
21 member belonging to a different state.  Therefore, both elements of diversity
22 jurisdiction under the Class Action Fairness Act of 2005 ("CAFA") are present, and
23 this Court has jurisdiction.

24      8.     Venue is proper in the United States District Court for the Central
25 District of California pursuant to 28 U.S.C. §§ 1391(b), (c) and(d) , because
26 Defendants are deemed to reside in any judicial district in which they are subject to
27 personal jurisdiction at the time the action is commenced. DirecTV resides in and
28 has its principal place of business in the Central District of California.  In addition,

FIRST AMENDED COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF

1   Defendants The CMI Group, Inc., The CMI Group GP, LLC, and Credit
2   Management, LP have sufficient contacts with the Central District of California to
3   subject them to personal jurisdiction.

**PARTIES**

5   9.   At all times pertinent hereto, Plaintiff Brown resided in Marion, Ohio,
6   though he now lives in Columbus, Ohio.

7   10.   DirecTV is a leading provider of digital television entertainment
8   throughout the United States, acquiring, promoting, selling, and distributing digital
9   entertainment programming primarily via satellite to millions of residential and
10   commercial subscribers.

11   11.   At all times pertinent hereto prior to December 22, 2011, DirecTV,
12   Inc. was a corporation organized and existing under the laws of the State of
13   California.

14   12.   Since July 2002, DirecTV has been, and remains, a limited liability
15   company organized and existing under the laws of the State of California and
16   having its principal place of business at 2230 E. Imperial Highway, El Segundo,
17   California 90245.

18   13.   Effective December 22, 2011, DirecTV, Inc. merged into DirecTV,
19   with the latter becoming the surviving limited liability company; and by virtue of
20   this merger, DirecTV assumed, and succeeded to, all of the liabilities of DirecTV,
21   Inc., including liability for the TCPA claims alleged herein.

22   14.   The CMI Group, Inc. is a leading debt collector, employing over 500
23   call center agents who seek to collect debts via telephone calls made throughout the
24   United States with the use of a Voice and an ATDS.  The CMI Group, Inc. operates
25   under the trade name "The CMI Group" and uses the logo "CMI."

26   15.   Since January 1999, The CMI Group, Inc. has been, and remains, a
27   corporation organized and existing under the laws of the State of Nevada and
28

-4-   FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1    having its principal place of business at 4200 International Parkway, Carrollton,

2    Texas 75007.

3         16.   Since December 2001, The CMI Group GP, LLC has been, and

4    remains, a limited liability company organized and existing under the laws of the

5    State of Nevada and having its principal place of business at 4200 International

6    Parkway, Carrollton, Texas 75007.

7         17.   Since December 2001, Credit Management, LP, has been, and

8    remains, a limited liability partnership organized and existing under the laws of the

9    State of Nevada and having its principal place of business at 4200 International

10   Parkway, Carrollton, Texas 75007.

11        18.   The general partner of Credit Management, LP is The CMI Group GP,

12   LLC, and the limited partner of Credit Management, LP is non-party The CMI

13   Group Limited Partner, LLC.  The CMI Group, Inc. wholly owns The CMI Group

14   GP, LLC and The CMI Group Limited Partner, LLC.

15        19.   As the general partner of Credit Management, LP, The CMI Group

16   GP, LLC is jointly and severally liable for all of the liabilities of Credit

17   Management, LP, including liability for the TCPA claims alleged herein.

18        20.   At all times pertinent hereto, Credit Management, LP has acted within

19   the course and scope of an agency relationship with The CMI Group, Inc., seeking

20   to collect debts on behalf of The CMI Group, Inc.'s creditor clients (including

21   DirecTV), as directed by The CMI Group, Inc., via telephone calls made

22   throughout the United States with the use of a Voice and an ATDS.  Accordingly,

23   The CMI Group, Inc. is jointly and severally liable for all of the liabilities of Credit

24   Management, LP, including liability for the TCPA claims alleged herein.

25        21.   The CMI Group, Inc. and Credit Management, LP hold themselves out

26   to the public as a single economic enterprise, and they function as a single

27   economic enterprise dominated by The CMI Group, Inc.  Accordingly, The CMI

28

FIRST AMENDED COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF

1  Group, Inc. is jointly and severally liable for all of the liabilities of Credit
2  Management, LP, including liability for the TCPA claims alleged herein.

3        22.    An example of this single economic enterprise is that The CMI Group,
4  Inc.'s logo "CMI" appears on some letterhead used by Credit Management, LP to
5  write debtors seeking payment on alleged debts.  And the debtors from whom
6  Credit Management, LP seeks to collect are assigned an individual "CMI Reference
7  #."

8        23.    In addition, The CMI Group, Inc.'s public website
9  (http://thecmigroup.com) states, "If you have a dispute or concern about your
10  account that is placed with Credit Management, LP please contact our office."
11  Furthermore, that website also states, "Are you a current customer looking to pay
12  your bill online?" and then displays a "Customer Bill Pay Online" link to "Credit
13  Management, LP's pay online public website (http://wwwcmipayonline.com).

14        24.    Aside from being identified as Credit Management's Pay Online
15  website copyrighted by "Credit Management, LP," Credit Management, LP's pay
16  online public website (http://wwwcmipayonline.com) also identifies the website as
17  "CMI's Pay Online"; displays The CMI Group, Inc's logo (*i.e.*, "CMI") and trade
18  name (*i.e.*, "the CMI Group"); and instructs debtors to mail or fax account disputes
19  and balance inquiries to "CMI, Attn: Resolutions Department, 4200 International
20  Parkway, Carrollton, TX 75007."

21        **THE TELEPHONE CONSUMER PROTECTION ACT OF 1991**
22              **(TCPA), 47 U.S.C. § 227**

23        25.    In 1991, Congress enacted the TCPA[1] in response to a growing
24  number of consumer complaints regarding certain telemarketing practices.

25        26.    The TCPA regulates, among other things, the use of Voice and ATDS.
26  Specifically, the plain language of section 227(b)(1)(A) prohibits the use of an

27  ────────────────

28  [1] Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (1991),
    codified at 47 U.S.C. § 227 (TCPA).  The TCPA amended Title II of the Communications Act of
    1934, 47 U.S.C. § 201 *et seq.*

FIRST AMENDED COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF

1    ATDS to make any call to a wireless number, or to use a Voice during such a call,

2    in the absence of an emergency or the prior express consent of the called party.[2]

3         27.    According to findings by the FCC, the agency Congress vested with

4    authority to issue regulations implementing the TCPA, such calls are prohibited

5    because, as Congress found, telephone calls using a Voice or an ATDS are a greater

6    nuisance and invasion of privacy than live solicitation calls, and such calls can be

7    costly and inconvenient.  The FCC also recognized that wireless customers are

8    charged for incoming calls whether they pay in advance or after the minutes are

9    used.[3]

10        28.    On January 4, 2008, the FCC released a Declaratory Ruling wherein it

11   confirmed that Voice and ATDS  debt collection calls to a wireless number by a

12   creditor or a debt collector are permitted only if the calls are made with the "prior

13   express consent" of the called party.[4]  The FCC "emphasize[d] that prior express

14   consent is deemed to be granted only if the wireless number was provided by the

15   consumer to the creditor, and that such number was provided during the transaction

16   that resulted in the debt owed."[5]

17        29.    The Declaratory Ruling further dictates that:  "a creditor on whose

18   behalf an autodialed or prerecorded message call is made to a wireless number

19   bears the responsibility for any violation of the Commission's rules.  Calls placed

20   by a third party collector on behalf of that creditor are treated as if the creditor itself

21   placed the call."[6]

22        30.    Under the TCPA and pursuant to the FCC's January 2008 Declaratory

23   Ruling, the burden is on Defendants to demonstrate that Plaintiff and Class

24

25   [2] 47 U.S.C. § 227(b)(1)(A).

     [3] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG
26   Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

27   [4] *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of
     1991 ("FCC Declaratory Ruling")*, 23 F.C.C.R. 559, 23 FCC Rcd. 559, 43 Communications Reg.
     (P&F) 877, 2008 WL 65485 (F.C.C.) (2008).

28   [5] *FCC Declaratory Ruling*, 23 F.C.C.R. at 564-65 (¶ 10).
     [6] *Id.*

FIRST AMENDED COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF

Members (as defined below) gave their prior express consent to a Voice or an ATDS call to their cell phone within the meaning of the statute.[7]

### FACTUAL ALLEGATIONS

31.     At all times pertinent hereto, DirecTV has carried on its business by engaging third-party debt collectors, including but not limited to Credit Management, LP (collectively, "DirecTV Debt Collectors") who, acting on behalf of DirecTV, have made telephone calls to the cellular telephones of consumers for purposes of collecting debts allegedly owed by them to DirecTV.  DirecTV has controlled or had the right to control the DirecTV Debt Collectors, including through written contracts that require DirecTV Debt Collectors to collect debt on behalf of DirecTV and by supplying the DirecTV Debt Collectors with the names and/or telephone numbers of consumers to be called.  DirecTV has directly benefitted from such calls because, among other reasons, DirecTV Debt Collectors request that consumers pay such debts directly to DirecTV and DirecTV has received payments pursuant to such requests.

32.     At all times pertinent hereto, The CMI Group, Inc. and Credit Management, L.P. have carried on their joint debt collection business, by having Credit Management, LP make telephone calls to the cellular telephones of consumers for purposes of collecting debts allegedly owed by them to DirecTV and other creditors.

II.     **First Challenged Practice: DirecTV Debt Collectors' Calls To Cellular Telephones Using A Voice And/Or An ATDS**

33.     At all times pertinent hereto, the DirecTV Debt Collectors, including Credit Management, LP, have utilized a Voice during debt collection calls made on behalf of DirecTV to the cellular telephones of consumers who had not, during the transaction that resulted in the debt, previously given DirecTV express consent to receive such calls.

---

[7] *See FCC Declaratory Ruling*, 23 F.C.C.R. at 565 (¶ 10).

34. Calls utilizing a Voice allow DirecTV to collect more debt.

35. At all times pertinent hereto, DirecTV has been aware that its DirecTV Debt Collectors have utilized a Voice during debt collection calls made on behalf of DirecTV. For example, prior to March 26, 2012, The CMI Group, Inc.'s public website (http://thecmigroup.com) stated that one of The CMI Group's "industry innovations" was "'agentless' recorded messages as reminders."

36. At all times pertinent hereto, DirecTV Debt Collectors, including Credit Management, LP, have also utilized an ATDS, including a predictive dialer, to make debt collection calls on behalf of Defendant DirecTV to the cellular telephones of consumers who had not, during the transaction that resulted in the debt, previously given DirecTV express consent to receive such calls.

37. A predictive dialer is an ATDS within the meaning of the TCPA, because it is equipment that, when paired with certain computer software, has the capacity to store or produce telephone numbers to be called and without human intervention to dial such numbers at random, in sequential order, and/or from a database of numbers.

38. DirecTV has entered into written contracts with its DirecTV Debt Collectors to use predictive dialers. For example, the terms of the Collection Services Agreement utilized by Credit Management, LP require that consumers be contacted "via mail and predictive dialer in an effort to collect on past due balances." *See Lee v. Credit Management, LP*, 2012 WL 113793, at *11 & n. 17 (S.D. Texas 2012).

39. Calls utilizing an ATDS allow DirecTV to collect more debt.

40. At all times pertinent hereto, DirecTV has been aware that its DirecTV Debt Collectors have utilized an ATDS because, *inter alia*, the use of an ATDS is standard industry practice among third-party debt collectors and because The CMI Group, Inc. detailed The CMI Group's debt collection techniques on its public website. For example, prior to March 26, 2012, The CMI Group, Inc's's public

1  website (http://thecmigroup.com) stated (A) that The CMI Group's "predictive
2  dialer enables us to reach more of our client's customers while maintaining a cost-
3  effective approach" and (B) that The CMI Group's "dialer *** completes call
4  campaigns more quickly *** conducts the most effective calling strategies *** ."

5      41.    On information and belief, within the past four years, DirecTV Debt
6  Collectors have made thousands of Voice and/or ATDS calls on behalf of DirecTV
7  to the cellular telephones of consumers who had not, during the transaction that
8  resulted in the debt, previously given DirecTV prior express consent to receive such
9  calls.

10 **III.   Second Challen ed Practice: Credit Mana ement, LP Makin  Calls To Cellular Telephones Usin  A Voice And/Or An ATDS**

11     42.    At all times pertinent hereto, Credit Management, LP, has utilized a
12 Voice during debt collection calls made on behalf of DirecTV to the cellular
13 telephones of consumers who had not, during the transaction that resulted in the
14 debt, previously given DirecTV consent to receive such calls.

15     43.    At all times pertinent hereto, Credit Management, LP, has also utilized
16 an ATDS, including a predictive dialer, to make debt collection calls on behalf of
17 DirecTV to the cellular telephones of consumers who had not, during the
18 transaction that resulted in the debt, previously given DirecTV express consent to
19 receive such calls.

20     44.    On information and belief, within the past four years, Credit
21 Management, LP has made thousands of Voice and/or ATDS calls on behalf of
22 DirecTV to the cellular telephones of consumers who had not, during the
23 transaction that resulted in the debt, previously given DirecTV prior express
24 consent to receive such calls.

25 **IV.   Plaintiff  rown**

26     45.    Plaintiff Brown is a "person" as defined by 47 U.S.C. § 153(39).

27
28

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

46.     In approximately July 2008, Plaintiff Brown opened an account with DirecTV, (then DirecTV, Inc.) for digital television entertainment services.

47.     In approximately July 2009, Plaintiff Brown closed his DirecTV account.

48.     In September 2010, Plaintiff Brown opened an account with Virgin Mobile for cellular telephone services and obtained a new cellular telephone.

49.     At the same time, Virgin Mobile assigned to Plaintiff Brown's cellular telephone a cellular telephone number never previously assigned to him.

50.     At no time has Plaintiff Brown provided his Virgin Mobile cellular telephone number to Defendants.  Rather, on information and belief, Defendants apparently obtained Plaintiff Brown's cellular telephone number through skip-tracing methods.

51.     At no time has Plaintiff Brown expressly consented to have Defendants make Voice telephone calls to him on his Virgin Mobile cellular telephone.

52.     At no time has Plaintiff Brown expressly consented to have Defendants call his Virgin Mobile cellular telephone via an ATDS.

53.     Under the TCPA and pursuant to the FCC's January 2008 Declaratory Ruling, the burden is on Defendants to demonstrate that Plaintiff provided prior express consent within the meaning of the statute.[8]

54.     At all times pertinent hereto, Plaintiff Brown paid for the aforesaid Virgin Mobile cellular telephone services.

55.     On or about January 18, 2011, Credit Management, LP notified Plaintiff Brown in writing that DirecTV (then DirecTV, Inc.) claimed that he owed $479.31 to DirecTV (an allegation denied by Plaintiff Brown).

56.     On or about January 18, 2011, Credit Management, LP, acting on behalf of DirecTV, knowingly or willfully made the first of a series of telephone

---

[8] *See FCC Declaratory Ruling*, 23 F.C.C.R. at 565 (¶ 10).

FIRST AMENDED COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF

1    calls to Plaintiff Brown's Virgin Mobile cellular telephone in an effort to collect the

2    alleged DirecTV debt from him.

3        57.    On February 15, 2011, Plaintiff Brown mailed to Credit Management,

4    LP via certified U.S. Mail, postage prepaid, the letter attached hereto as Exhibit A

5    ("Letter"), which reads in part:

6        "I would also like to request, in writing, that no telephone contact is to

7        be made by your office to my home or any other phone number. If

8        your offices attempt telephone communication with me, including but

         not limited to computer generated calls and calls or correspondence

9        sent to or with any third parties, it will be considered harassment and I

         will have no choice but to file suit.  All future communications with

10       me MUST be done in writing and sent to the address noted in this

11       letter by USPS."

12       58.    The certified mail receipt for the mailing of the Letter via certified

13   U.S. Mail is attached hereto as Exhibit B.

14       59.    Credit Management, LP received the Letter on or before February 18,

15   2011.

16       60.    Notwithstanding receipt of the Letter, Credit Management, LP acting

17   on behalf of DirecTV, knowingly or willfully made ten more calls to Plaintiff

18   Brown's Virgin Mobile cellular phone between February 19, 2011, and March 3,

19   2011, in an effort to collect the alleged DirecTV debt from him.

20       61.    Credit Management, LP, acting on behalf of DirecTV, utilized a

21   predictive dialer to make all of the calls described above.

22       62.    Credit Management, LP, acting on behalf of DirecTV, utilized a Voice

23   during at least some of the calls described above.

24       63.    All of the calls described above were made by Credit Management,

25   LP, on behalf of DirecTV, to Plaintiff Brown's Virgin Mobile cellular telephone

26   solely to collect a debt allegedly owed to DirecTV.

27

28

FIRST AMENDED COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF

## CLASS ACTION ALLEGATIONS

64.   Plaintiff brings this action on behalf of himself and on behalf of all other persons similarly situated consisting of one class and one subclass (respectively, the "Class" and the "Subclass").

65.   Plaintiff proposes the following class definition for the Class, subject to amendment as appropriate:

> All persons residing within the United States who, on or after four years prior to the filing of this action, received a non-emergency telephone call(s) from DirecTV and/or its third-party debt collectors regarding a debt allegedly owed to DirecTV, to a cellular telephone through the use of an automatic telephone dialing system or an artificial or prerecorded voice and who did not provide prior express consent for such call(s) during the transaction that resulted in the debt owed.

Plaintiff represents, and is a member of, the Class.  Excluded from the Class are DirecTV and any entities in which DirecTV has a controlling interest, DirecTV's agents and employees, any Judge and Magistrate Judge to whom this action is assigned and any member of such Judges' staffs and immediate families, and claims for personal injury, wrongful death and/or emotional distress.

66.   Plaintiff proposes the following class definition for the Subclass, subject to amendment as appropriate:

> All persons residing within the United States who, on or after four years prior to the filing of this action, received a non-emergency telephone call(s) from Credit Management, LP regarding a debt allegedly owed to DirecTV, to a cellular telephone through the use of an automatic telephone dialing system or an artificial or prerecorded voice and who did not provide prior express consent for such call(s) during the transaction that resulted in the debt owed.

Plaintiff represents, and is a member of, the Sublass.  Excluded from the Sublass are Credit Management, LP, The CMI Group, Inc., The CMI Group GP, LLC, The CMI Group Limited Partner, LLC, the agents and employees of the foregoing entities, any Judge and Magistrate Judge to whom this action is assigned and any member of such Judges' staffs and immediate families, and claims for personal

1  injury, wrongful death and/or emotional distress.

2      67.   Plaintiff does not know the exact number of members in the Class or

3  the Subclass, but based upon the representations of Defendants regarding their sales

4  and market share, number of employees, and/or territorial scope of operations,

5  Plaintiff reasonably believes that Class and Subclass members number at minimum

6  in the tens of thousands.

7      68.   The identity of the Class and Subclass members can be readily

8  ascertained from the records of Defendants.

9      69.   Plaintiff and all members of the Class and the Subclass have been

10  harmed by the acts of Defendants in that many of them were charged additional

11  money for the cell phone minutes taken up by Defendant's illegal calls, and all have

12  had their privacy invaded and been inconvenienced by such calls.

13      70.   This Class Action Complaint seeks injunctive relief, declaratory relief,

14  and damages.

15      71.   The joinder of all Class and Subclass members is impracticable due to

16  the size of each class and the relatively modest value of each individual claim. The

17  disposition of the claims in a class action will provide substantial benefit to the

18  parties and the Court in avoiding a multiplicity of identical suits.

19      72.   There are well-defined, nearly identical, questions of law and fact

20  affecting all parties. The questions of law and fact involving the class claims

21  predominate over questions which may affect individual Class and Subclass

22  members. Those common questions of law and fact include, but are not limited to,

23  the following:

24      a.   Whether the non-emergency calls made to Plaintiff's, Class

25  members', and Subclass members' cellular telephones used an automatic telephone

26  dialing system and/or an artificial or prerecorded voice;

27      b.   Whether such calls were made by or on behalf of Defendants;

28

FIRST AMENDED COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF

c.    Whether the Defendants can meet their burden of showing they obtained prior express consent (*i.e.*, consent that is clearly and unmistakably stated), during the transaction that resulted in the debt owed, to make such calls;

d.    Whether the Defendants' conduct was knowing and/or willful;

e.    Whether the Defendants are liable for damages, and the amount of such damages; and

f.    Whether the Defendants should be enjoined from engaging in such conduct in the future.

73.   As a person who received numerous and repeated telephone calls using an automatic telephone dialing system and/or an artificial or prerecorded voice, without his prior express consent within the meaning of the TCPA, Plaintiff asserts claims that are typical of each Class and Subclass member. Plaintiff will fairly and adequately represent and protect the interests of the Class and Subclass, and has no interests which are antagonistic to any member of the Class or the Subclass.

74.   Plaintiff has retained counsel experienced in handling class action claims involving violations of federal and state consumer protection statutes, including class action claims under the TCPA.

75.   A class action is the superior method for the fair and efficient adjudication of this controversy. Classwide relief is essential to compel Defendants to comply with the TCPA and the Rules. The interest of Class and Subclass members in individually controlling the prosecution of separate claims against Defendants is small because the statutory damages in an individual action for violation of the TCPA and the Rules are relatively small. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated and the Class and Subclass members, by definition, did not provide the prior express consent required under the statute to authorize calls to their cellular telephones.

76.     Defendants have acted on grounds generally applicable to the Class and Subclass, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class and Subclass as a whole appropriate. Moreover, on information and belief, Plaintiffs allege that the TCPA and Rules violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

## UNENFORCEA LE AR ITRATION CLAUSE

77.     On information and belief, during the relevant time period DirecTV has sought to impose a standard take-it-or-leave-it arbitration clause in some underlying contracts with certain Class and/or Subclass members and/or in a subsequent "bill-stuffers" sent after the contractual relationship arose, which states that "all Claims relating to your account" may be subject to arbitration.

78.     Any such purported arbitration clause is not enforceable or applicable to the TCPA and Rules claims at issue here. By its express terms, the arbitration clause is limited to claims that relate to a DirecTV account. Calling a consumer's phone number in a manner that violates the TCPA and Rules does not relate to the consumer's account. *See In re Jiffy Lube Int'l, Inc.*, --- F. Supp. 2d ---, Case No. 11-md-2261-JM-JMA, 2012 U.S. Dist. LEXIS 31926, at *27-28 (S.D. Cal. Mar. 8, 2012) (refusing to compel arbitration of TCPA claim where an "incredibly broad" arbitration clause encompassed "any and all disputes, controversies or claims (including breach of warranty, contract, tort or any other claim)"). The arbitration clause is therefore separate and independent of Plaintiffs' TCPA and Rules claims here, such that Plaintiff and the Class and Subclass members did not agree to arbitrate their claims with respect to the TCPA and Rules.

79.     DirecTV's arbitration clause is also unenforceable because it is unconscionable: DirecTV's arbitration clause imposes significant burdens on its customers with respect to arbitration, including the imposition of foreign law, distant arbitration forums, and outsized costs. This is precisely why DirecTV's

FIRST AMENDED COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF

1  arbitration clause has been held unenforceable by several courts, including the

2  Ninth Circuit Court of Appeals.  *See, e.g., Masters v. DirecTV, Inc.*, Case Nos . 08-

3  55825 and 08-55830., 2009 WL 4885132 (9th Cir. Nov. 19, 2009).

4       80.    In addition, DirecTV's arbitration clause prevents its customers from

5  vindicating their federal statutory rights under the TCPA and Rules, and is therefore

6  unenforceable as against public policy.

7  ## CAUSES OF ACTION

8  ### FIRST COUNT

9  ### KNOWING AND/OR WILLFUL VIOLATIONS OF THE TELEPHONE
10 ### CONSUMER PROTECTION ACT, 47 U.S.C. § 227 *ET SEQ.*, AND THE FCC
   ### RULES PROMULGATED THEREUNDER, 47 C.F.R. §64.1200

11 **(On   ehalf of Plaintiff and All Class and Subclass Members)**

12      81.    Plaintiff incorporates by reference the foregoing paragraphs of this
13
14 Complaint as if fully stated herein.

        82.    The foregoing acts and omissions of Defendants constitute numerous
15
16 and multiple knowing and/or willful violations of the TCPA and Rules, including

   but not limited to each of the above-cited provisions of 47 U.S.C. § 227 *et seq.*
17
18      83.    As a result of Defendants' knowing and/or willful violations of 47

19 U.S.C. § 227 *et seq.* and 47 C.F.R. §64.1200, Plaintiff and members of the Class

20 and Subclass are entitled to treble damages of up to $1,500.00 for each and every

21 call made in violation of the statute and Rules, pursuant to 47 U.S.C. §

22 227(b)(3)(C).

        84.    Plaintiffs and all Class and Subclass members are also entitled to and
23
24 do seek injunctive relief prohibiting such conduct violating the TCPA and Rules by

   Defendants in the future.
25
26      85.    Plaintiffs and Class and Subclass members are also entitled to an

27 award of attorneys' fees and costs.

28

FIRST AMENDED COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF

## SECOND COUNT

## VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227 *ET SEQ.*, AND THE FCC RULES PROMULGATED THEREUNDER, 47 C.F.R. §64.1200

### (On  ehalf of Plaintiff and All Class and Subclass Members)

86.    Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

87.    The foregoing acts and omissions of Defendants constitute numerous and multiple violations of the TCPA and Rules, including but not limited to each of the above cited provisions of 47 U.S.C. § 227 *et seq.*

88.    As a result of Defendants violations of 47 U.S.C. § 227 *et seq.* and 47 C.F.R. §64.1200 Plaintiff and Class and Subclass members are entitled to an award of $500.00 in statutory damages for each and every call made in violation of the statute and Rules, pursuant to 47 U.S.C. § 227(b)(3)(B).

89.    Plaintiff and Class and Subclass members are also entitled to and do seek injunctive relief prohibiting Defendants' violation of the TCPA and Rules in the future.

90.    Plaintiff and Class and Subclass members are also entitled to an award of attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court grant Plaintiff and all Class and Subclass members the following relief against Defendants:

A.    Injunctive relief prohibiting such violations of the TCPA and Rules by Defendants in the future;

B.    As a result of Defendants' willful and/or knowing violations of 47 U.S.C. § 227(b)(1) and 47 C.F.R. §64.1200, Plaintiff seeks for himself and each Class and Subclass member treble damages, as provided by statute, of up to $1,500.00 for each and every call that violated the TCPA and Rules;

1        C.    As a result of Defendants' violations of 47 U.S.C. § 227(b)(1) and 47

2    C.F.R. §64.1200, Plaintiff seeks for himself and each Class and Subclass member

3    $500.00 in statutory damages for each and every call that violated the TCPA and

4    Rules;

5        D.    An award of reasonable attorneys' fees and costs to counsel for

6    Plaintiff and the Class and Subclass;

7        E.    An order certifying this action to be a proper class action pursuant to

8    Federal Rule of Civil Procedure 23, establishing the appropriate Class and

9    Subclass, as the Court deems appropriate, finding that Plaintiff is a proper

10   representative of the Class and Subclass, and appointing the lawyers and law firms

11   representing Plaintiff as counsel for the Class and Subclass; and

12       F.    Such other relief as the Court deems just and proper.

13   **DEMAND FOR JURY TRIAL**

14       Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial

15   by jury of any and all issues in this action so triable of right.

16

17   Dated:  November 26, 2012         Respectfully submitted,
                                                MEYER WILSON CO., LPA
18

19                                  By:

20                                  Marnie C. Lambert (State Bar No. 165019)

21                                  2029 Century Park East, Suite 1400
                                                Los Angeles, CA 90067
22                                  Telephone:  310-623-4562
                                                Facsimile:  310-772-2293
23

24                                  Lieff Cabraser Heimann & Bernstein, LLP
                                                Jonathan D. Selbin (State Bar No. 170222)
25                                  275 Battery Street, 29th Floor
                                                San Francisco, CA  94111
26                                  Telephone:  415-956-1000
                                                Facsimile:  415-956-1008
27

28

                FIRST AMENDED COMPLAINT FOR DAMAGES AND
                                                INJUNCTIVE RELIEF

1

LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
Daniel M. Hutchinson (State Bar No. 239458)
275 Battery Street, 29th Floor
San Francisco, California  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

2

3

4

5

MEYER WILSON CO., LPA
Matthew R. Wilson (admitted *pro hac vice*)
Daniel R. Freytag (admitted *pro hac vice*)
1320 Dublin Road, Ste. 100
Columbus, Ohio 43215
Telephone:  (614) 224-6000
Facsimile:  (614) 224-6066

6

7

8

9

*Attorneys for Plaintiff and the Proposed Class*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF

# EXHIBIT A

Credit Management
4200 International Pkwy.
Carrollton, TX 75007

February 14, 2011

Joshua Brown
985 Congress Ave
Marion, OH 43302

CMI Reference # 0458658981
Creditor: 480000-DIRECTV
Acount # 051350465
Total Balance Due: 479.31

**To Whom It May Concern:**

This letter is being sent to you in response to a notice sent to me on January 18, 2011. Be advised that this is not a refusal to pay, but a notice sent pursuant to the Fair Debt Collection Practices Act, 15 USC 1692g Sec. 809 (b) that your claim is disputed and validation is requested.

This is NOT a request for "verification" or proof of my mailing address, but a request for VALIDATION made pursuant to the above named Title and Section. I respectfully request that your offices provide me with competent evidence that I have any legal obligation to pay you.

Please provide me with the following:

1. What the money you say I owe is for;
2. Explain and show me how you calculated what you say I owe;
3. Provide me with copies of any papers that show I agreed to pay what you say I owe;
4. Provide a verification or copy of any judgment if applicable;
5. Show me that you are licensed to collect in my state
6. Provide me with your license numbers and Registered Agent

At this time I will also inform you that if your offices have reported invalidated information to any of the 3 major Credit Bureau's (Equifax, Experian or TransUnion) this action might constitute fraud under both Federal and State Laws. Due to this fact, if any negative mark is found on any of my credit reports by your company, or the company that you represent, I will not hesitate bringing legal action against you for the following:

Violation of the Fair Credit Reporting Act
Violation of the Fair Debt Collection Practices Act
Defamation of Character
If your offices are able to provide the proper documentation as requested in the following Declaration, I will require at least 30 days to investigate this information and during such time all collection activity must cease and desist.

Also during this validation period, if any action is taken which could be considered detrimental to any of my credit reports, I will consult with my legal counsel for suit. This includes any listing any information to a credit reporting repository that could be inaccurate or invalidated or verifying an account as accurate when in fact there is no provided proof that it is.

If your offices fail to respond to this validation request within 30 days from the date of your receipt, all references to this account must be deleted and completely removed from my credit file and a copy of such deletion request shall be sent to me immediately.

I would also like to request, in writing, that no telephone contact is to be made by your office to my home or any other phone number. If your offices attempt telephone communication with me, including but not limited to computer generated calls and calls or correspondence sent to or with any third parties, it will be considered harassment and I will have no choice but to file suit. All future communications with me MUST be done in writing and sent to the address noted in this letter by USPS.

It would be advisable that you assure that your records are in order before I am forced to take legal action. This is an attempt to correct your records, any information obtained shall be used for that purpose.

Best Regards,

Joshua Brown

# EXHIBIT B



**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

CARROLLTON, TX 75007                                    0702

| | | |
|---|---|---|
| Postage | $ | $0.44 |
| Certified Fee | | $2.80 |
| Return Receipt Fee (Endorsement Required) | | $0.00 |
| Restricted Delivery Fee (Endorsement Required) | | $0.00 |
| Total Postage & Fees | $ | $3.24 |

Postmark Here — FEB 15 2011 — 02/15/2011

Sent To: Credit Management

Street, Apt. No.; or PO Box No.: 4200 International Pkwy

City, State, ZIP+4: Carrollton TX 75007

PS Form 3800, August 2006                     See Reverse for Instructions

7010 1670 0001 4887 5696