LIEFF CABRASER HEIMANN
  & BERNSTEIN, LLP
Jonathan D. Selbin (State Bar No. 170222)
jselbin@lchb.com
Douglas I. Cuthbertson (admitted *pro hac vice*)
dcuthbertson@lchb.com
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone:   (212) 355-9500
Facsimile:   (212) 355-9592

LIEFF CABRASER HEIMANN
  & BERNSTEIN, LLP
Daniel M. Hutchinson (State Bar No. 239458)
dhutchinson@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone:   (415) 956-1000
Facsimile:   (415) 956-1008

MEYER WILSON CO., LPA
Marnie C. Lambert (State Bar No. 165019)
mlambert@meyerwilson.com
2029 Century Park East, Suite 1400
Los Angeles, CA 90067
Telephone:   (310) 623-4562
Facsimile:   (310) 772-2293

Attorneys for Plaintiff *Joshua D. Brown
and the Proposed Classes*

MEYER WILSON CO., LPA
Matthew R. Wilson (admitted *pro hac vice*)
mwilson@meyerwilson.com
Daniel R. Freytag (admitted *pro hac vice*)
dfreytag@meyerwilson.com
1320 Dublin Road, Ste. 100
Columbus, OH 43215
Telephone:   (614) 224-6000
Facsimile:   (614) 224-6066

PARISI & HAVENS LLP
David C. Parisi (162248)
dcparisi@parisihavens.com
15233 Valleyheart Drive
Sherman Oaks, CA 91403
Telephone:   (818) 990-1299
Facsimile:   (818) 501-7852

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

JOSHUA D. BROWN, on behalf of himself and all others similarly situated,

Plaintiffs,

v.

DIRECTV, LLC; ET AL.,

Defendants.

Case No. CV 12-8382-DMG

**SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF PURSUANT TO 47 U.S.C. § 227, ET SEQ. (TELEPHONE CONSUMER PROTECTION ACT) AND CAL. BUS. & PROF. CODE § 17200, ET SEQ. (UNFAIR COMPETITION LAW)**

CLASS ACTION

JURY TRIAL DEMANDED

Plaintiff Joshua D. Brown, individually and on behalf of all others similarly situated, makes the following allegations and claims against Defendants DIRECTV, LLC, The CMI Group, Inc., The CMI Group GP, LLC, and Credit Management, LP (collectively, "Defendants"), upon his personal knowledge, the investigation of his counsel, and information and belief as follows:

## INTRODUCTION

1.     Plaintiff brings this action against Defendants for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"), the Federal Communication Commission rules promulgated thereunder,47 C.F.R. §64.1200 ("Rules"), and California Business & Professions Code §§ 17200, *et seq.*, the Unfair Competition Law ("UCL"), by Defendants and their present, former, and/or future direct and indirect predecessors, parent companies, subsidiaries, affiliates, agents, and/or related entities.  Defendants have violated the TCPA, Rules, and UCL by making telephone calls to Plaintiff and others similarly situated on their cellular telephones with the use of  "an artificial or prerecorded voice" (collectively, "Voice") as described in 47 U.S.C. § 227(b)(1)(A) and/or  an "automatic telephone dialing system" ("ATDS"), as defined by 47 U.S.C. § 227(a)(1), without their prior express consent within the meaning of the TCPA and the Rules.

2.     On December 12, 2005, the United States Department of Justice, acting on behalf of the Federal Trade Commission ("FTC" or "Commission"), filed a complaint for civil penalties and injunctive relief against Defendant DIRECTV, LLC ("DIRECTV") and telemarketing companies it hired to promote DIRECTV programming for violating the TCPA, the FTC Act, and the Do Not Call provisions of the Commission's Telemarketing Sales Rule.  *See* Complaint, *United States v. DirecTV, Inc., et al.*, No. 05-1211 (C.D. Cal. Dec. 12, 2005).  According to the Complaint, DIRECTV engaged several telemarketing firms and individuals that, "acting on behalf of DIRECTV," engaged in telemarketing conduct that violated

the TCPA.  The Complaint states that DIRECTV either knew or consciously avoided knowing the methods by which their telemarketers were promoting DIRECTV's programming.

3.     Two days later, on December 14, 2005, DIRECTV and its telemarketers settled the FTC charges against them for $5,335,000, which was, at that time, the largest penalty announced by the FTC for violation of a consumer protection law.  DIRECTV also entered into a permanent injunction requiring it, among other things, to monitor all telemarketing campaigns conducted by its authorized telemarketers to confirm that "[n]ot more than three percent (3%) of telemarketing calls answered by a person, measured per day per calling campaign, are being connected to a pre-recorded message in lieu of a live sales call."

4.     Notwithstanding these prior violations of the TCPA and the FTC settlement, Defendants have violated the TCPA, the Rules, and UCL by making calls to Plaintiff and others similarly situated on their cellular telephones with the use of a Voice and/or an ATDS without their prior express consent within the meaning of the TCPA.

5.     Plaintiff brings this action for damages, and other legal and equitable remedies, resulting from Defendants' conduct in violation of the TCPA, Rules, and UCL.

## JURISDICTION AND VENUE

6.     Pursuant to 28 U.S.C. § 1331, this Court has original subject matter jurisdiction over the claims set forth herein arising under the TCPA and the Rules.

7.     In addition, this matter in controversy exceeds $5,000,000, as each member of the proposed Class of at least tens of thousands is entitled to up to $1,500.00 in statutory damages for each call that violated the TCPA and the Rules.  Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. § 1332(d)(2).  Further, Plaintiff alleges a national Class, which will result in at least one Class member belonging to a different state.  Therefore, both elements of diversity

- 3 -

1  jurisdiction under the Class Action Fairness Act of 2005 ("CAFA") are present, and

2  this Court has jurisdiction.

3        8.    Venue is proper in the United States District Court for the Central

4  District of California pursuant to 28 U.S.C. §§ 1391(b), (c) and (d), because

5  Defendants are deemed to reside in any judicial district in which they are subject to

6  personal jurisdiction at the time the action is commenced. DIRECTV resides in and

7  has its principal place of business in the Central District of California.  In addition,

8  Defendants The CMI Group, Inc., The CMI Group GP, LLC, and Credit

9  Management, LP have sufficient contacts with the Central District of California to

10  subject them to personal jurisdiction.

11  **PARTIES**

12        9.    At all times pertinent hereto, Plaintiff Brown resided in Marion, Ohio,

13  though he now lives in Columbus, Ohio.

14        10.    DIRECTV is a leading provider of digital television entertainment

15  throughout the United States, acquiring, promoting, selling, and distributing digital

16  entertainment programming primarily via satellite to millions of residential and

17  commercial subscribers.

18        11.    At all times pertinent hereto prior to December 22, 2011, DIRECTV,

19  Inc. was a corporation organized and existing under the laws of the State of

20  California.

21        12.    Since July 2002, DIRECTV has been, and remains, a limited liability

22  company organized and existing under the laws of the State of California and

23  having its principal place of business at 2230 E. Imperial Highway, El Segundo,

24  California 90245.

25        13.    Effective December 22, 2011, DIRECTV, Inc. merged into DIRECTV,

26  with the latter becoming the surviving limited liability company; and by virtue of

27  this merger, DIRECTV assumed, and succeeded to, all of the liabilities of

28  DIRECTV, Inc., including liability for the TCPA and UCL claims alleged herein.

14.     The CMI Group, Inc. is a leading debt collector, employing over 500 call center agents who seek to collect debts via telephone calls made throughout the United States with the use of a Voice and an ATDS.  The CMI Group, Inc. operates under the trade name "The CMI Group" and uses the logo "CMI."

15.     Since January 1999, The CMI Group, Inc. has been, and remains, a corporation organized and existing under the laws of the State of Nevada and having its principal place of business at 4200 International Parkway, Carrollton, Texas 75007.

16.     Since December 2001, The CMI Group GP, LLC has been, and remains, a limited liability company organized and existing under the laws of the State of Nevada and having its principal place of business at 4200 International Parkway, Carrollton, Texas 75007.

17.     Since December 2001, Credit Management, LP, has been, and remains, a limited liability partnership organized and existing under the laws of the State of Nevada and having its principal place of business at 4200 International Parkway, Carrollton, Texas 75007.

18.     The general partner of Credit Management, LP is The CMI Group GP, LLC, and the limited partner of Credit Management, LP is non-party The CMI Group Limited Partner, LLC.  The CMI Group, Inc. wholly owns The CMI Group GP, LLC and The CMI Group Limited Partner, LLC.

19.     As the general partner of Credit Management, LP, The CMI Group GP, LLC is jointly and severally liable for all of the liabilities of Credit Management, LP, including liability for the TCPA claims alleged herein.

20.     At all times pertinent hereto, Credit Management, LP has acted within the course and scope of an agency relationship with The CMI Group, Inc., seeking to collect debts on behalf of The CMI Group, Inc.'s creditor clients (including DIRECTV), as directed by The CMI Group, Inc., via telephone calls made throughout the United States with the use of a Voice and an ATDS.  Accordingly,

The CMI Group, Inc. is jointly and severally liable for all of the liabilities of Credit Management, LP, including liability for the TCPA claims alleged herein.

21.     The CMI Group, Inc. and Credit Management, LP hold themselves out to the public as a single economic enterprise, and they function as a single economic enterprise dominated by The CMI Group, Inc.  Accordingly, The CMI Group, Inc. is jointly and severally liable for all of the liabilities of Credit Management, LP, including liability for the TCPA claims alleged herein.

22.     An example of this single economic enterprise is that The CMI Group, Inc.'s logo "CMI" appears on some letterhead used by Credit Management, LP to write debtors seeking payment on alleged debts.  And the debtors from whom Credit Management, LP seeks to collect are assigned an individual "CMI Reference #."

23.     In addition, The CMI Group, Inc.'s public website (http://thecmigroup.com) states, "If you have a dispute or concern about your account that is placed with Credit Management, LP please contact our office." Furthermore, that website also states, "Are you a current customer looking to pay your bill online?" and then displays a "Customer Bill Pay Online" link to "Credit Management, LP's pay online public website (http://wwwcmipayonline.com).

24.     Aside from being identified as Credit Management's Pay Online website copyrighted by "Credit Management, LP," Credit Management, LP's pay online public website (http://wwwcmipayonline.com) also identifies the website as "CMI's Pay Online"; displays The CMI Group, Inc.'s logo (*i.e.*, "CMI") and trade name (*i.e.*, "the CMI Group"); and instructs debtors to mail or fax account disputes and balance inquiries to "CMI, Attn: Resolutions Department, 4200 International Parkway, Carrollton, TX 75007."

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991
## (TCPA), 47 U.S.C. § 227

25.　　In 1991, Congress enacted the TCPA[1] in response to a growing number of consumer complaints regarding certain telemarketing practices.

26.　　The TCPA regulates, among other things, the use of Voice and ATDS. Specifically, the plain language of section 227(b)(1)(A) prohibits the use of an ATDS to make any call to a wireless number, or to use a Voice during such a call, in the absence of an emergency or the prior express consent of the called party.[2]

27.　　According to findings by the FCC, the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, telephone calls using a Voice or an ATDS are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.  The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.[3]

28.　　On January 4, 2008, the FCC released a Declaratory Ruling wherein it confirmed that Voice and ATDS debt collection calls to a wireless number by a creditor or a debt collector are permitted only if the calls are made with the "prior express consent" of the called party.[4]  The FCC "emphasize[d] that prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed."[5]

---

[1] Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (1991), codified at 47 U.S.C. § 227 (TCPA).  The TCPA amended Title II of the Communications Act of 1934, 47 U.S.C. § 201 *et seq.*

[2] 47 U.S.C. § 227(b)(1)(A).

[3] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

[4] *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991* ("*FCC Declaratory Ruling*"), 23 F.C.C.R. 559, 23 FCC Rcd. 559, 43 Communications Reg. (P&F) 877, 2008 WL 65485 (F.C.C.) (2008).

[5] *FCC Declaratory Ruling*, 23 F.C.C.R. at 564-65 (¶ 10).

29.    The Declaratory Ruling further dictates that: "a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules.  Calls placed by a third party collector on behalf of that creditor are treated as if the creditor itself placed the call."[6]

30.    Under the TCPA and pursuant to the FCC's January 2008 Declaratory Ruling, the burden is on Defendants to demonstrate that Plaintiff and Class Members (as defined below) gave their prior express consent to a Voice or an ATDS call to their cell phone within the meaning of the statute.[7]

## **FACTUAL ALLEGATIONS**

31.    At all times pertinent hereto, DIRECTV has carried on its business by engaging third-party debt collectors, including but not limited to Credit Management, LP (collectively, "DIRECTV Debt Collectors") who, acting on behalf of DIRECTV, have made telephone calls to the cellular telephones of consumers for purposes of collecting debts allegedly owed by them to DIRECTV.  DIRECTV has controlled or had the right to control the DIRECTV Debt Collectors, including through written contracts that require DIRECTV Debt Collectors to collect debt on behalf of DIRECTV and by supplying the DIRECTV Debt Collectors with the names and/or telephone numbers of consumers to be called.  DIRECTV has directly benefitted from such calls because, among other reasons, DIRECTV Debt Collectors request that consumers pay such debts directly to DIRECTV and DIRECTV has received payments pursuant to such requests.

32.    At all times pertinent hereto, The CMI Group, Inc. and Credit Management, L.P. have carried on their joint debt collection business, by having Credit Management, LP make telephone calls to the cellular telephones of

---

[6] *Id.*
[7] *See FCC Declaratory Ruling*, 23 F.C.C.R. at 565 (¶ 10).

consumers for purposes of collecting debts allegedly owed by them to DIRECTV and other creditors.

## II.     First Challenged Practice: DIRECTV Debt Collectors' Calls To Cellular Telephones Using A Voice And/Or An ATDS

33.     At all times pertinent hereto, the DIRECTV Debt Collectors, including Credit Management, LP, have utilized a Voice during debt collection calls made on behalf of DIRECTV to the cellular telephones of consumers who had not, during the transaction that resulted in the debt, previously given DIRECTV express consent to receive such calls.

34.     Calls utilizing a Voice allow DIRECTV to collect more debt.

35.     At all times pertinent hereto, DIRECTV has been aware that its DIRECTV Debt Collectors have utilized a Voice during debt collection calls made on behalf of DIRECTV.  For example, prior to March 26, 2012, The CMI Group, Inc.'s public website (http://thecmigroup.com) stated that one of The CMI Group's "industry innovations" was "'agentless' recorded messages as reminders."

36.     At all times pertinent hereto, DIRECTV Debt Collectors, including Credit Management, LP, have also utilized a Voice, including a predictive dialer, to make debt collection calls on behalf of Defendant DIRECTV to the cellular telephones of consumers who had not, during the transaction that resulted in the debt, previously given DIRECTV express consent to receive such calls.

37.     A  predictive dialer is an ATDS within the meaning of the TCPA, because it is equipment that, when paired with certain computer software, has the capacity to store or produce telephone numbers to be called and without human intervention to dial such numbers at random, in sequential order, and/or from a database of numbers.

38.     DIRECTV has entered into written contracts with its DIRECTV Debt Collectors to use predictive dialers.  For example, the terms of the Collection Services Agreement utilized by Credit Management, LP require that consumers be

SECOND AMENDED COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF
CASE NO.  CV 12-8382-DMG

contacted "via mail and predictive dialer in an effort to collect on past due balances." *See Lee v. Credit Management, LP*, 2012 WL 113793, at *11 & n. 17 (S.D. Texas 2012).

39.   Calls utilizing an ATDS allow DIRECTV to collect more debt.

40.   At all times pertinent hereto, DIRECTV has been aware that its DIRECTV Debt Collectors have utilized an ATDS because, *inter alia*, the use of an ATDS is standard industry practice among third-party debt collectors and because The CMI Group, Inc. detailed The CMI Group's debt collection techniques on its public website.  For example, prior to March 26, 2012, The CMI Group, Inc.'s public website (http://thecmigroup.com) stated (A) that The CMI Group's "predictive dialer enables us to reach more of our client's customers while maintaining a cost-effective approach" and (B) that The CMI Group's "dialer *** completes call campaigns more quickly *** conducts the most effective calling strategies *** ."

41.   On information and belief, within the past four years, DIRECTV Debt Collectors have made thousands of Voice and/or ATDS calls on behalf of DIRECTV to the cellular telephones of consumers who had not, during the transaction that resulted in the debt, previously given DIRECTV prior express consent to receive such calls.

### III.   Second Challenged Practice: Credit Management, LP Making Calls To Cellular Telephones Using A Voice And/Or An ATDS

42.   At all times pertinent hereto, Credit Management, LP, has utilized a Voice during debt collection calls made on behalf of DIRECTV to the cellular telephones of consumers who had not, during the transaction that resulted in the debt, previously given DIRECTV consent to receive such calls.

43.   At all times pertinent hereto, Credit Management, LP, has also utilized an ATDS, including a predictive dialer, to make debt collection calls on behalf of DIRECTV to the cellular telephones of consumers who had not, during the

1   transaction that resulted in the debt, previously given DIRECTV express consent to

2   receive such calls.

3        44.    On information and belief, within the past four years, Credit

4   Management, LP has made thousands of Voice and/or ATDS calls on behalf of

5   DIRECTV to the cellular telephones of consumers who had not, during the

6   transaction that resulted in the debt, previously given DIRECTV prior express

7   consent to receive such calls.

8   **IV.**    <u>**Plaintiff Brown**</u>

9        45.    Plaintiff Brown is a "person" as defined by 47 U.S.C. § 153(39).

10        46.    In approximately July 2008, Plaintiff Brown opened an account with

11   DIRECTV, (then DIRECTV, Inc.) for digital television entertainment services.

12        47.    In approximately July 2009, Plaintiff Brown closed his DIRECTV

13   account.

14        48.    In September 2010, Plaintiff Brown opened an account with Virgin

15   Mobile for cellular telephone services and obtained a new cellular telephone.

16        49.    At the same time, Virgin Mobile assigned to Plaintiff Brown's cellular

17   telephone a cellular telephone number never previously assigned to him.

18        50.    At no time has Plaintiff Brown provided his Virgin Mobile cellular

19   telephone number to Defendants.  Rather, on information and belief, Defendants

20   apparently obtained Plaintiff Brown's cellular telephone number through skip-

21   tracing methods.

22        51.    At no time has Plaintiff Brown expressly consented to have

23   Defendants make Voice telephone calls to him on his Virgin Mobile cellular

24   telephone.

25        52.    At no time has Plaintiff Brown expressly consented to have

26   Defendants call his Virgin Mobile cellular telephone via an ATDS.

27

28

53.     Under the TCPA and pursuant to the FCC's January 2008 Declaratory Ruling, the burden is on Defendants to demonstrate that Plaintiff provided prior express consent within the meaning of the statute.[8]

54.     At all times pertinent hereto, Plaintiff Brown paid for the aforesaid Virgin Mobile cellular telephone services.

55.     On or about January 18, 2011, Credit Management, LP notified Plaintiff Brown in writing that DIRECTV (then DIRECTV, Inc.) claimed that he owed $479.31 to DIRECTV (an allegation denied by Plaintiff Brown).

56.     On or about January 18, 2011, Credit Management, LP, acting on behalf of DIRECTV, knowingly or willfully made the first of a series of telephone calls to Plaintiff Brown's Virgin Mobile cellular telephone in an effort to collect the alleged DIRECTV debt from him.

57.     On February 15, 2011, Plaintiff Brown mailed to Credit Management, LP  via certified U.S. Mail, postage prepaid, the letter attached hereto as Exhibit A ("Letter"), which reads in part:

> "I would also like to request, in writing, that no telephone contact is to be made by your office to my home or any other phone number. If your offices attempt telephone communication with me, including but not limited to computer generated calls and calls or correspondence sent to or with any third parties, it will be considered harassment and I will have no choice but to file suit.  All future communications with me MUST be done in writing and sent to the address noted in this letter by USPS."

58.     The certified mail receipt for the mailing of the Letter via certified U.S. Mail is attached hereto as Exhibit B.

59.     Credit Management, LP received the Letter on or before February 18, 2011.

60.     Notwithstanding receipt of the Letter, Credit Management, LP acting on behalf of DIRECTV, knowingly or willfully made ten more calls to Plaintiff

---

[8] *See FCC Declaratory Ruling*, 23 F.C.C.R. at 565 (¶ 10).

Brown's Virgin Mobile cellular phone between February 19, 2011, and March 3, 2011, in an effort to collect the alleged DIRECTV debt from him.

61.     Credit Management, LP, acting on behalf of DIRECTV, utilized a predictive dialer to make all of the calls described above.

62.     Credit Management, LP, acting on behalf of DIRECTV, utilized a Voice during at least some of the calls described above.

63.     All of the calls described above were made by Credit Management, LP, on behalf of DIRECTV, to Plaintiff Brown's Virgin Mobile cellular telephone solely to collect a debt allegedly owed to DIRECTV.

## CLASS ACTION ALLEGATIONS

64.     Plaintiff brings this action on behalf of himself and on behalf of all other persons similarly situated consisting of one class and one subclass (respectively, the "Class" and the "Subclass").

65.     Plaintiff proposes the following class definition for the Class, subject to amendment as appropriate:

> All persons residing within the United States who, on or after four years prior to the filing of this action, received a non-emergency telephone call(s) from DIRECTV and/or its third-party debt collectors regarding a debt allegedly owed to DIRECTV, to a cellular telephone through the use of an automatic telephone dialing system or an artificial or prerecorded voice and who did not provide prior express consent for such call(s) during the transaction that resulted in the debt owed.

Plaintiff represents, and is a member of, the Class. Excluded from the Class are DIRECTV and any entities in which DIRECTV has a controlling interest, DIRECTV's agents and employees, any Judge and Magistrate Judge to whom this action is assigned and any member of such Judges' staffs and immediate families, and claims for personal injury, wrongful death and/or emotional distress.

66.     Plaintiff proposes the following class definition for the Subclass, subject to amendment as appropriate:

> All persons residing within the United States who, on or

- 13 -

after four years prior to the filing of this action, received a non-emergency telephone call(s) from Credit Management, LP regarding a debt allegedly owed to DIRECTV, to a cellular telephone through the use of an automatic telephone dialing system or an artificial or prerecorded voice and who did not provide prior express consent for such call(s) during the transaction that resulted in the debt owed.

Plaintiff represents, and is a member of, the Subclass.  Excluded from the Subclass are Credit Management, LP, The CMI Group, Inc., The CMI Group GP, LLC, The CMI Group Limited Partner, LLC, the agents and employees of the foregoing entities, any Judge and Magistrate Judge to whom this action is assigned and any member of such Judges' staffs and immediate families, and claims for personal injury, wrongful death and/or emotional distress.

67. Plaintiff does not know the exact number of members in the Class or the Subclass, but based upon the representations of Defendants regarding their sales and market share, number of employees, and/or territorial scope of operations, Plaintiff reasonably believes that Class and Subclass members number at minimum in the tens of thousands.

68. The identity of the Class and Subclass members can be readily ascertained from the records of Defendants.

69. Plaintiff and all members of the Class and the Subclass  have been harmed by the acts of Defendants in that many of them were charged additional money for the cell phone minutes taken up by Defendant's illegal calls, and all have had their privacy invaded and been inconvenienced by such calls.

70. This Class Action Complaint seeks injunctive relief, declaratory relief, and damages.

71. The joinder of all Class and Subclass members is impracticable due to the size of each class and the relatively modest value of each individual claim.  The disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

72.     There are well-defined, nearly identical, questions of law and fact affecting all parties.  The questions of law and fact involving the class claims predominate over questions which may affect individual Class and Subclass members.  Those common questions of law and fact include, but are not limited to, the following:

a.     Whether the non-emergency calls made to Plaintiff's, Class members', and Subclass  members' cellular telephones used a Voice and/or an ATDS;

b.     Whether such calls were made by or on behalf of Defendants;

c.     Whether the Defendants can meet their burden of showing they obtained prior express consent (*i.e.*, consent that is clearly and unmistakably stated), during the transaction that resulted in the debt owed, to make such calls;

d.     Whether the Defendants' conduct was knowing and/or willful;

e.     Whether the Defendants are liable for damages, and the amount of such damages; and

f.     Whether the Defendants should be enjoined from engaging in such conduct in the future.

73.     As a person who received numerous and repeated telephone calls using an ATDS and/or a Voice, without his prior express consent within the meaning of the TCPA, Plaintiff asserts claims that are typical of each Class and Subclass member.  Plaintiff will fairly and adequately represent and protect the interests of the Class and Subclass, and has no interests which are antagonistic to any member of the Class or the Subclass.

74.     Plaintiff has retained counsel experienced in handling class action claims involving violations of federal and state consumer protection statutes, including class action claims under the TCPA and UCL.

75.     A class action is the superior method for the fair and efficient adjudication of this controversy.  Classwide relief is essential to compel Defendants

to comply with the TCPA, Rules, and UCL.  The interest of Class and Subclass members in individually controlling the prosecution of separate claims against Defendants is small because the statutory damages in an individual action for violation of the TCPA and the Rules are relatively small.  Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated and the Class and Subclass members, by definition, did not provide the prior express consent required under the statute to authorize calls to their cellular telephones.

76.     Defendants have acted on grounds generally applicable to the Class and Subclass, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class and Subclass as a whole appropriate.  Moreover, on information and belief, Plaintiffs allege that the TCPA, Rules, and UCL violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

## INAPPLICABLE AND/OR UNENFORCEABLE ARBITRATION CLAUSE

77.     On information and belief, during the relevant time period DIRECTV has sought to impose a standard take-it-or-leave-it arbitration clause in some underlying contracts with certain Class and/or Subclass members and/or in a subsequent "bill-stuffers" sent after the contractual relationship arose, which states that "all Claims relating to your account" may be subject to arbitration.

78.     Any such purported arbitration clause is not enforceable or applicable to the TCPA and Rules claims at issue here.  By its express terms, the arbitration clause is limited to claims that relate to a DIRECTV account.  Calling a consumer's phone number in a manner that violates the TCPA and Rules does not relate to the consumer's account.  *See In re Jiffy Lube Int'l, Inc.*, --- F. Supp. 2d ---, Case No. 11-md-2261-JM-JMA, 2012 U.S. Dist. LEXIS 31926, at *27-28 (S.D. Cal. Mar. 8, 2012) (refusing to compel arbitration of TCPA claim where an "incredibly broad" arbitration clause encompassed "any and all disputes, controversies or claims

(including breach of warranty, contract, tort or any other claim)").  The arbitration clause is therefore separate and independent of Plaintiffs' TCPA and Rules claims here, such that Plaintiff and the Class and Subclass members did not agree to arbitrate their claims with respect to the TCPA and Rules.

79.     DIRECTV's arbitration clause is also unenforceable because it is unconscionable: DIRECTV's arbitration clause imposes significant burdens on its customers with respect to arbitration, including the imposition of foreign law, distant arbitration forums, and outsized costs.  This is precisely why DIRECTV's arbitration clause has been held unenforceable by several courts, including the Ninth Circuit Court of Appeals.  *See, e.g., Masters v. DirecTV, Inc.*, Case Nos . 08-55825 and 08-55830., 2009 WL 4885132 (9th Cir. Nov. 19, 2009).

80.     DIRECTV's arbitration clause prevents its customers from vindicating their federal statutory rights under the TCPA and Rules, and is therefore unenforceable as against public policy.

81.     Plaintiff's UCL claim for injunctive relief against DIRECTV is not arbitrable.  *Broughton v. Cigna Healthplans*, 21 Cal. 4th 1066, 1088 (Cal. 1999); *Cruz v. PacifiCare Health Sys., Inc*., 30 Cal. 4th 303, 316 (Cal. 2003).

## <u>CHOICE OF LAW</u>

82.     California law applies to Plaintiff's UCL claims because: (1) DIRECTV resides in California; (2) the application of foreign law, such as the law of Ohio where Plaintiff resides, is contrary to California's public policy holding inarbitrable claims under California's Unfair Competition Law for injunctive relief because Ohio and certain other states do not have the same public policy invalidating such arbitration agreements, *see Broughton v. Cigna Healthplans*, 21 Cal. 4th 1066, 1088 (Cal. 1999); *Cruz v. PacifiCare Health Systems, Inc*., 30 Cal. 4th 303, 316 (Cal. 2003); and (3) California has a materially greater interest in the application of its law and the resolution of this case because DIRECTV resides in

SECOND AMENDED COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF
CASE NO.  CV 12-8382-DMG

California and DIRECTV designed and implemented its illegal course of conduct in California.

83.     DIRECTV's customer service agreement contains an unenforceable choice of law clause, which purports to apply the law of the state of the plaintiff's residence.  For these reasons, DIRECTV's exact choice of law clause at issue in this case has been held unenforceable by the Central District of California and the Ninth Circuit Court of Appeals.  *See Murphy v. DirecTV, Inc.,* 2008 U.S. Dist. LEXIS 123186, at *11-18 (C.D. Cal. May 9, 2008) (*affirmed by Masters v. DirecTV, Inc*., 2009 U.S. App. LEXIS 25479 (9th Cir. Nov. 19, 2009)).

## CAUSES OF ACTION

## FIRST COUNT

### KNOWING AND/OR WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227 *ET SEQ*., AND THE FCC RULES PROMULGATED THEREUNDER, 47 C.F.R. §64.1200

**(On Behalf of Plaintiff and All Class and Subclass Members Against All Defendants)**

84.     Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully stated herein.

85.     The foregoing acts and omissions of Defendants constitute numerous and multiple knowing and/or willful violations of the TCPA and Rules, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227 *et seq.*

86.     As a result of Defendants' knowing and/or willful violations of 47 U.S.C. § 227 *et seq.* and 47 C.F.R. §64.1200, Plaintiff and members of the Class and Subclass are entitled to treble damages of up to $1,500.00 for each and every call made in violation of the statute and Rules, pursuant to 47 U.S.C. § 227(b)(3)(C).

87.     Plaintiffs and all Class and Subclass members are also entitled to and do seek injunctive relief prohibiting such conduct violating the TCPA and Rules by Defendants in the future.

88.     Plaintiffs and Class and Subclass members are also entitled to an award of attorneys' fees and costs.

## SECOND COUNT

### VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227 *ET SEO*., AND THE FCC RULES PROMULGATED THEREUNDER, 47 C.F.R. §64.1200

**(On Behalf of Plaintiff and All Class and Subclass Members Against All Defendants)**

89.     Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

90.     The foregoing acts and omissions of Defendants constitute numerous and multiple violations of the TCPA and Rules, including but not limited to each of the above cited provisions of 47 U.S.C. § 227 *et seq.*

91.     As a result of Defendants violations of 47 U.S.C. § 227 *et seq.* and 47 C.F.R. §64.1200 Plaintiff and Class and Subclass members are entitled to an award of $500.00 in statutory damages for each and every call made in violation of the statute and Rules, pursuant to 47 U.S.C. § 227(b)(3)(B).

92.     Plaintiff and Class and Subclass members are also entitled to and do seek injunctive relief prohibiting Defendants' violation of the TCPA and Rules in the future.

93.     Plaintiff and Class and Subclass members are also entitled to an award of attorneys' fees and costs.

## THIRD COUNT

### VIOLATIONS OF CALIFORNIA'S UNFAIR COMPETITION LAW, CAL. BUS. & PROF. CODE SECTION 17200, ET SEQ.

**(On Behalf of Plaintiff and All Class Members Against Defendant DIRECTV, LLC Only)**

94.     Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

95.     Defendant DIRECTV's practice of making telephone calls to Plaintiff and members of the Class on their cellular telephones with the use an Artificial Voice and/or an ATDS without their prior express consent within the meaning of the TCPA and the Rules violates 47 U.S.C. § 227 *et seq.*, and the Rules promulgated thereunder.

96.     Defendant DIRECTV's conduct described herein violates Cal. Bus & Prof. Code § 17200 *et seq.* (the "UCL") in the following respects:

        a.      Defendant DIRECTV's hiring of and supervision of debt collectors employing automated and predictive dialing techniques to harass Plaintiff and members of the Class is unlawful and a violation of the UCL.

        b.      Defendant DIRECTV's use of automated and predictive dialing techniques to harass Plaintiff and members of the Class is unlawful and a violation of the UCL.

        c.      Each of Defendant DIRECTV's violations of the TCPA and Rules constitute a separate and independent violation of the UCL because such conduct was illegal and unfair competition within the meaning of the UCL.

97.     The harm to Plaintiff and the Class arising from Defendant DIRECTV's illegal practices outweighs the utility, if any, of those practices.

98.     The illegal business practices of Defendant DIRECTV are immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to Plaintiff and members of the Class.

99.     Unless restrained by this Court, Defendant DIRECTV will continue to engage in the illegal acts and practices alleged above.

100.    Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiffs and the Class are therefore entitled to:

        a.      an Order requiring Defendant DIRECTV to cease the unlawful acts alleged herein; and

b.      payment of their attorneys' fees and costs pursuant to, *inter alia*, Cal. Code Civ. Proc. § 1021.5.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court grant Plaintiff and all Class and Subclass members the following relief against Defendants:

A.      Injunctive relief prohibiting such violations of the TCPA, Rules, and the UCL by Defendants in the future;

B.      As a result of Defendants' willful and/or knowing violations of 47 U.S.C. § 227(b)(1) and 47 C.F.R. §64.1200, Plaintiff seeks for himself and each Class and Subclass member treble damages, as provided by statute, of up to $1,500.00 for each and every call that violated the TCPA and Rules;

C.      As a result of Defendants' violations of 47 U.S.C. § 227(b)(1) and 47 C.F.R. §64.1200, Plaintiff seeks for himself and each Class and Subclass member $500.00 in statutory damages for each and every call that violated the TCPA and Rules;

D.      An award of reasonable attorneys' fees and costs to counsel for Plaintiff and the Class and Subclass;

E.      An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing the appropriate Class and Subclass, as the Court deems appropriate, finding that Plaintiff is a proper representative of the Class and Subclass, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class and Subclass; and

F.      Such other relief as e Court deems just and proper.

### DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable of right.

1   Dated:  March 18, 2013

2

3

Respectfully submitted,

By:_____
           Jonathan D. Selbin

4   Lieff Cabraser Heimann & Bernstein, LLP
Jonathan D. Selbin (State Bar No. 170222)

5   jselbin@lchb.com
Douglas I. Cuthbertson (admitted *pro hac*

6   *vice*)
dcuthbertson@lchb.com

7   250 Hudson Street, 8th Floor
New York, NY 10013

8   Telephone:  (212) 355-9500
Facsimile:  (212) 355-9592

9

10

LIEFF CABRASER, HEIMANN &
BERNSTEIN, LLP

11

Daniel M. Hutchinson (State Bar No. 239458)
dhutchinson@lchb.com

12

275 Battery Street, 29th Floor
San Francisco, CA  94111-3339

13

Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

14

MEYER WILSON CO., LPA
Matthew R. Wilson (admitted *pro hac vice*)

15

mwilson@meyerwilson.com
Daniel R. Freytag (admitted *pro hac vice*)

16

dfreytag@meyerwilson.com1320 Dublin
Road, Ste. 100

17

Columbus, OH 43215
Telephone:  (614) 224-6000

18

Facsimile:  (614) 224-6066

19

Marnie C. Lambert (State Bar No. 165019)
mlambert@meyerwilson.com

20

2029 Century Park East, Suite 1400
Los Angeles, CA 90067

21

Telephone:  (310) 623-4562
Facsimile:  (310) 772-2293

22

PARISI & HAVENS LLP
David C. Parisi (162248)

23

dcparisi@parisihavens.com
15233 Valleyheart Drive

24

Sherman Oaks, CA 91403
Telephone:  (818) 990-1299

25

Facsimile:  (818) 501-7852

26

*Attorneys for Plaintiff and the Proposed Class*

27

28