O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSHUA D. BROWN, on behalf of himself and all others similarly situated,<br><br>                    Plaintiff,<br><br>         v.<br><br>DIRECTV, LLC, THE CMI GROUP, INC., THE CMI GROUP GP, LLC, and CREDIT MANAGEMENT, LLP,<br><br>                    Defendants. | Case No. CV 12-08382 DMG (Ex)<br><br>**ORDER RE DIRECTV'S MOTIONS TO COMPEL ARBITRATION** |

This matter is before the Court on Defendant DIRECTV, LLC's motions to compel arbitration. [Doc. ## 27, 68.] The Court held a hearing on June 21, 2013. After careful consideration of the parties' moving papers, exhibits, and arguments at the hearing, and for the reasons set forth below, the Court concludes that Plaintiff agreed to the arbitration provisions, the claims at issue fall within the scope of the arbitration provisions, and all the claims against DIRECTV are arbitrable. Accordingly, DIRECTV's motions are **GRANTED**.

//

# I.

## PROCEDURAL BACKGROUND

On November 19, 2013, Plaintiff Joshua D. Brown, on behalf of himself and all others similarly situated, filed a First Amended Complaint ("FAC") against Defendants DIRECTV LLC ("DIRECTV"), The CMI Group, Inc., The CMI Group GP, LLC, and Credit Management, LLP, raising claims for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.* [Doc. # 17.] On December 18, 2012, DIRECTV filed its first motion to compel arbitration ("TCPA Mot."). [Doc. # 27.] On January 16, 2013, Brown filed his opposition [Doc. # 45], and on January 30, 2013, DIRECTV filed a reply.

On December 31, 2012, Brown filed a motion for leave to amend his FAC, which the Court granted on March 13, 2013 [Doc. # 65.] On March 18, 2013, Brown filed the operative Second Amended Complaint ("SAC"), retaining the prior TCPA claim and adding a claim under the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq*. [Doc. # 67.] On February 11, 2013, Brown filed a motion to take arbitration-related discovery and subsequently to file a surreply to DIRECTV's motion to compel. [Doc. # 56.] The Court granted this motion on March 13, 2013, permitting both a surreply and a response from DIRECTV. Brown filed a surreply on May 13, 2013 [Doc. # 70], and DIRECTV filed a response on May 20, 2013 [Doc. # 72].

On April 10, 2013, DIRECTV filed a second motion to compel arbitration, in response to the UCL claim raised in the SAC ("UCL Mot."). [Doc. # 68.] On May 10, 2013, Brown filed an opposition [Doc. # 69], and on May 17, 2013, DIRECTV filed a reply [Doc. # 71].

# II.

## FACTUAL BACKGROUND

On August 3, 2008, Brown completed an online order for DIRECTV's satellite television service. (Decl. of Joshua D. Brown ("Brown Decl.") ¶ 4 [Doc. # 45-1]; Decl. of Shoshana B. Riss ("Riss Decl.") ¶ 2 [Doc. # 47-1].) Before finalizing orders on the

DIRECTV website, all new subscribers are directed to a "Checkout: Payment" page, where they must confirm their payment. (DIRECTV Resp. to Interrogatory No. 1 at 5 (Decl. of Daniel M. Hutchison ("Hutchison Decl."), Ex. C) [Doc. # 70-1]. At the payment page, under the phrase "DIRECTV Terms and Conditions," appears a text box with three bullet points. The text box also contains a scroll bar, indicating that there is more information not present on the screen. (*Id.*; Riss Decl. ¶¶ 3, 5, Ex. A.)[1] The terms include, *inter alia*, the following bullet point:

> You and DIRECTV® agree that any dispute arising under or relating to your agreements or service with DIRECTV®, which cannot be resolved informally, will be resolved through binding arbitration as fully set forth in the DIRECTV® Customer Agreement (a copy is sent with your first bill but may also be viewed at DIRECTV.com). Arbitration means you waive your right to a jury trial.

(Riss Decl., Ex. A, at 5.) Before completing the payment process, a customer must check a box affirming that he "ha[s] read and accept[s] all of the terms and conditions above, including the DIRECTV® Customer Agreement" ("the Agreement"). (Riss Decl., Ex. A.) During checkout, the title of the Agreement appears as a hyperlink, which directs the customer to the text of the Agreement itself. (Hutchison Decl., Ex. C at 6). The customer cannot complete the process without checking the box. (*Id.*) Brown does not recall reading the Customer Agreement or seeing the arbitration clause during checkout. (Brown Decl. ¶ 6; Opp'n at 3 (arguing that the Agreement was only sent with the first bill and did not appear online).)

On August 5, 2008, DIRECTV technicians installed equipment at Brown's residence. On the same date, Brown signed a form entitled "DIRECTV Equipment Lease

---

[1] DIRECTV does not keep a record of the screen that each individual customer sees. DIRECTV provides evidence of the online ordering process for every customer as of June 3, 2008, and further attests that the process did not change between June 3, 2008 and August 3, 2008. (Riss Decl. ¶¶ 3-4.)

Addendum" ("Equipment Lease"). (Hutchison Decl, Ex. E.) The Equipment Lease includes the following clause:

> **ARBITRATION**. You and DIRECTV agree that both parties will resolve any dispute arising under this Equipment Lease Addendum, the DIRECTV Customer Agreement or any other addendum thereto, or regarding your DIRECTV programming service, through binding arbitration as fully set forth in the DIRECTV Customer Agreement.

(*Id.*) On August 6, 2008, DIRECTV mailed Brown his first bill, which included a copy of the Agreement. (Decl. of Valerie W. McCarthy ("McCarthy Decl.") ¶ 3, 11 [Doc. # 27-2].)

The arbitration clause of the Customer Agreement[2] provides, in relevant part, as follows:

> **9. RESOLVING DISPUTES**
>
> In order to expedite and control the cost of disputes, you and we agree that any legal or equitable claim relating to this Agreement, any addendum, or your Service (referred to as a "Claim") will be resolved as follows:
>
> \*   \*   \*
>
> (b)   Formal Resolution. Except as provided in Section 9(d), if we cannot resolve a Claim informally, any Claim either of us asserts will be

---

[2] DIRECTV asserts that it can change the Customer Agreement at any time, and that a customer assents to the agreement by not cancelling service. Generally, though, "mere silence or inaction in the face of the offer of a contract cannot amount to an acceptance." *Wold v. League of Cross of Archdiocese of San Francisco*, 114 Cal. App. 474, 479, 300 P. 57 (1931). Silence or inactivity will constitute assent only "where circumstances or the previous course of dealing between the parties places the offeree under a duty to act or be bound." *Beatty Safway Scaffold, Inc. v. Skrable*, 180 Cal. App. 2d 650, 655, 4 Cal. Rptr. 543 (1960) (citing *Wold*, 114 Cal. App. at 479). DIRECTV changed the Customer Agreement once during the time Brown was a customer, and has provided copies of both versions. (McCarthy Decl., Exs. A, B.) Because the relevant portions of the arbitration clause are identical in the two versions, the Court need not address whether Brown is bound by the later version of the Customer Agreement.

> resolved only by binding arbitration. The arbitration will be conducted under the rules of JAMS that are in effect at the time the arbitration is initiated (referred to as the "JAMS Rules") and under the rules set forth in this Agreement. If there is a conflict between JAMS Rules and the rules set forth in this Agreement, the rules set forth in this Agreement will govern. ARBITRATION MEANS THAT YOU WAIVE YOUR RIGHT TO A JURY TRIAL. . . . If you decide to initiate arbitration, . . . [u]nless we agree to pay your fee for you, you only need to pay an arbitration initiation fee equal to [the filing fee required to initiate a lawsuit in the appropriate court of law in your state], not to exceed $125; we agree to pay any additional fee or deposit required by JAMS to initiate your arbitration. We also agree to pay the costs of the arbitration proceeding. Other fees, such as attorney's fees and expenses of travel to the arbitration will be paid in accordance with JAMS Rules. The arbitration will be held at a location in your hometown area unless you and we both agree to another location or telephonic arbitration. . . .
>
> \* \* \*
>
> (d) <u>Exceptions.</u> Notwithstanding the foregoing . . . any dispute involving a violation of the Communications Act of 1934, 47 U.S.C. § 605, the Digital Millennium Copyright Act, 17 U.S.C. § 1201, the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2521 or any other statement or law governing theft of service, may be decided only by a court of competent jurisdiction.

(McCarthy Decl., Ex. A, at 8-9.)

Brown attests that he cancelled his DIRECTV service in July 2009. (Brown Decl. ¶ 9.) DIRECTV attests that Brown stopped paying for service in July 2009, but continued to receive service until October 2009. (McCarthy Decl. ¶ 14.) Some time after October 2009, DIRECTV transferred Brown's account to Defendant CMI Group for collection action. (*Id.* ¶ 15.) Brown attests that between January 18, 2013 and March 3, 2013, he received automated phone calls from Defendant Credit Management, L.P.

(Brown Decl. ¶ 14.)  Those phone calls form the underlying factual basis for Plaintiff's claims.

## III.

## **LEGAL STANDARD**

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, provides that written provisions to arbitrate disputes are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *AT&T Mobility LLC v. Concepcion,* __U.S.__, 131 S. Ct. 1740, 1744, 179 L. Ed. 2d 742 (2011) (quoting 9 U.S.C. § 2) (internal quotation marks omitted).  This provision reflects "both a 'liberal federal policy favoring arbitration' and the 'fundamental principle that arbitration is a matter of contract.'"  *Id.* at 1745 (quoting *Rent-A-Center, West, Inc. v. Jackson*, __ U.S. __, 130 S.Ct. 2772, 2776, 177 L.Ed.2d 403 (2010); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)) (internal quotation marks omitted).

As long as an arbitration clause is not itself invalid under "generally applicable contract defenses, such as fraud, duress, or unconscionability," *id*. at 1746 (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996)) (internal quotation marks omitted) (citing *Perry v. Thomas*, 482 U.S. 483, 492-93 n.9, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987)), it must be enforced according to its terms, *id*. at 1745 (citing *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989)). *See also Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985) ("By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." (citing 9 U.S.C. §§ 3, 4)).  Thus, this Court's role under the FAA is limited to determining "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue."  *Kilgore v. Keybank, Nat. Ass'n,* __ F.3d __, No. 09-16703, 2013 WL 1458876

(9th Cir. 2013) (*en banc*) ("*Kilgore II*") (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)).

## IV.
## DISCUSSION

### A. Brown Assented to the Arbitration Clause

Brown argues that he did not assent to the Customer Agreement in general and the arbitration clause specifically. DIRECTV contends that Brown agreed to the Customer Agreement, and thus the arbitration clause, by (1) affirming that he read and agreed to its provisions while ordering DIRECTV's service online; (2) signing the Equipment Lease Agreement; and (3) not canceling service after he received the Customer Agreement with his first bill. Because the Court agrees with DIRECTV's first two contentions, it need not address the third.

On two separate occasions – while purchasing service and in the Equipment Lease – Brown expressly assented to the terms of the Agreement. While Brown asserts that he does not recall seeing an arbitration provision during his online order, DIRECTV's evidence demonstrates that he must have encountered language alerting him both to the existence of the Agreement and the arbitration clause specifically, as well as a hyperlink that would have brought him directly to the Agreement. On the Equipment Lease, the provision was even more obvious, present as it was, immediately above the signature line.

Brown cannot claim lack of knowledge under these circumstances. It is a well-established principle of California contract law that "the law imputes to a person the intention corresponding to the reasonable meaning of his words and acts" based on "his outward expression" and not "his unexpressed intent." See *Edwards v. Comstock Insurance Co.* 205 Cal. App. 3d 1164, 1169, 252 Cal. Rptr. 807 (1988). Moreover, as this Court observed in *Lima v. Gateway, Inc.,* 886 F. Supp. 2d 1170 (C.D. Cal. 2012), "when one purchases a product and is aware that other terms and conditions govern that purchase, he or she is bound by those terms as soon as the purchase is complete even [if]

the purchaser does not receive a copy of those additional terms until a later date." 886 F. Supp. 2d at 1177 (internal quotation marks omitted) (citing *Hill v. Gateway 2000, Inc.*, 105 F.3d 1147 (7th Cir. 1997) and *ProCD, Inc. v. Zeidenberg,* 86 F.3d 1447 (7th Cir. 1997)). Based upon the evidence in the record, the Court finds that Brown assented to the Agreement in general and the arbitration clause specifically.

## B. The Arbitration Provision Encompasses The Dispute At Issue

Brown next argues that the arbitration clause does not encompass his TPCA or UCL claims, because they do not arise under or relate to the Agreement.

### 1. Collection Calls for Missed Payments Relate to the Contract

A party to an arbitration clause may only be compelled to arbitrate claims that fall within the scope of the clause. Given the strong federal policy favoring arbitration, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone*, 460 U.S. at 24-25. Brown saw or could have seen three different versions of the arbitration requirements. The arbitration provision in the online checkout page summarized the scope to include "any dispute arising under or relating to your agreements or service with DIRECTV." The arbitration provision of the Equipment Lease includes "any dispute arising under this Equipment Lease Addendum, the DIRECTV Customer Agreement or any other addendum thereto, or regarding your DIRECTV programming service." Both of these provisions were clear, however, that they were summaries of the terms set forth fully in the Agreement. Therefore, the relevant arbitration provision was that of the Agreement, which extends to "any legal or equitable claim relating to this Agreement, any addendum, or [a customer's] Service."

The Ninth Circuit has indicated that arbitration clauses that use only "arising under" language should be narrowly construed, while "relating to" language is much broader in scope. *Cape Flattery Ltd. v. Titan Mar., LLC*, 647 F.3d 914, 922 (9th Cir. 2011), *cert. denied*, __ U.S. __, 132 S. Ct. 1862, 182 L. Ed. 2d 658 (2012) ("Because of the absence of the 'relating to' language in the arbitration provision, we had 'no difficulty finding that 'arising hereunder' is intended to cover a much narrower scope of disputes,

Case 2:12-cv-08382-DMG-E   Document 81   Filed 06/26/13   Page 9 of 19   Page ID #:1025

i.e., only those relating to the interpretation and performance of the contract itself.'") (quoting *Mediterranean Enterprises, Inc. v. Ssangyong Construction Co.,* 708 F.2d 1458, 1464 (9th Cir.1983)). Accordingly, the "relating to" language in the arbitration clause at issue in this case is relatively broad.

Brown argues, citing *Williston on Contracts*, that tort-based TCPA claims are not related to a contract unless they are "in essence a breach of contract claim or based on a breach of contract." (Opp'n to TCPA Mot. at 12 (citing 21 *Williston on Contracts* § 57:31 (4th ed. 2010).) Yet, the same section in *Williston on Contracts* begins by stating that "[c]laims *arising out of* torts and nuisances may be submitted to arbitration." *Id.* (emphasis added). The section also states that "the law is clear that tort claims and claims other than breach of contract are not automatically excluded from a contractual arbitration clause . . . . Whether a claim falls within the scope of an arbitration agreement turns on the factual allegations in the complaint rather than the legal causes of action asserted. . . ." *Id. Williston* merely sketches the contours of arbitration clauses, and does not address the distinction the Ninth Circuit has made between "arising under" and "related to." Brown also cites *Cape Flattery* for the same proposition, but it too interprets only the narrower "arising under" language. 647 F.3d at 924 ("The present dispute does not turn on an interpretation of any clause in the contract. . . . We therefore conclude that under the narrow interpretation of "arising under" in *Mediterranean* and *Tracer*, the present dispute is not arbitrable.") Brown's argument that TCPA claims are not arbitrable blurs the distinction between "arising under" language and "relating to" language and, for that reason, the Court rejects it.

Brown relies on *In re Jiffy Lube Int'l, Inc., Text Spam Litig.,* 847 F. Supp. 2d 1253, 1262-63 (S.D. Cal. 2012), for the further contention that TCPA violations are not "related to" the Agreement. The *Jiffy Lube* court, however, was faced with a "Pledge of Satisfaction" designed to ensure satisfaction with a one-time transaction, which included an arbitration clause that purported to cover "any and all disputes" arising between the parties, not merely disputes relating to the contract. *Id.* at 1262. The court observed that

-9-

if it were to take the wildly broad scope of the arbitration clause at its word, the contract "would clearly be unconscionable." *Id.* at 1263. The court noted that it was being asked to read the clause narrowly enough to avoid invalidation, but broadly enough to encompass a TCPA claim based on a marketing text message that did not in any way relate to the customer's completed oil change. *Id.* The court declined to do so, without illuminating whether it was reading an implicit limitation into the clause or finding it invalid. *Id.*

The facts of *Jiffy Lube* are not analogous to the situation at hand. The arbitration clause at issue in this case is not as broad as that in *Jiffy Lube*. Instead of a reference to "any and all disputes," it contains the more limited "relating to" language that was absent from the arbitration clause in *Jiffy Lube*.[3] *Smith v. Steinkamp*, 318 F.3d 775 (7th Cir. 2003), also cited by Brown, raises a point similar to that in *Jiffy Lube*, when it suggests that there must be natural limits to the arbitral scope. Facing a comparably broad arbitration clause, the court wrote that it would be an "absurd result[]" to compel arbitration in the hypothetical situation where a plaintiff brings a wrongful death suit based on a defendant lender's murder of a borrower in order to encourage defaults. *Id.* at 777. Once again, the court took issue with the sheer breadth of the arbitration provision. Here, unlike in *Jiffy Lube*, the provision in question is simply not broad enough to compel

---

[3] In *dicta*, the *Jiffy Lube* court observed:

> Even if the court were willing to read the agreement so as to contain a typical limitation, such as that the dispute at issue must "arise out of or relate to" the contract, it is doubtful whether that language would encompass the claims here. Though it seems likely that Cushnie provided his telephone number when signing the contract, it is unclear that later use of that number to commit a tort can be said to relate to the contract.

847 F.Supp.2d at 1263. Because it was merely posing a hypothetical, the court did not have occasion to address the Ninth Circuit precedent regarding the difference between "arising under" and "related to." This off the cuff remark in *Jiffy Lube* is therefore not persuasive.

arbitration in *Steinkamp*'s extreme hypothetical, and thus the decision tells us nothing more about whether the TCPA claim relates to the contract.

This action is about whether collection calls were legal under TCPA. Other district courts have compelled arbitration of TCPA claims in similar circumstances. *See, e.g.*, *Cayanan v. Citi Holdings, Inc.*, ___F. Supp. 2d ___, 12-CV-1476-MMA JMA, 2013 WL 784662, at *20 (S.D. Cal. Mar. 1, 2013) (calls made to plaintiffs "because Plaintiffs had failed to make timely payments on their accounts," "for the limited purpose of collecting money owed them," and "not . . . for advertising, marketing, or other purposes unrelated to the accounts," were " 'related to' the delinquent credit accounts" and thus TCPA claims based on those calls were covered by Citi arbitration clause); *Coppock v. Citigroup, Inc.*, C11-1984-JCC, 2013 WL 1192632, at (W.D. Wash. Mar. 22, 2013) (same); *McNamara v. Royal Bank of Scotland Grp., PLC*, 11-CV-2137-L WVG, 2012 WL 5392181, at *7 (S.D. Cal. Nov. 5, 2012) (same). *Canayan*, *Coppock*, and *McNamara* found that collection calls were "related to" unpaid credit card contracts, to which collection is undoubtedly more central, but the principle remains the same. Indeed, the Agreement expressly contemplates collection in paragraph 2(g): "<u>Collection Costs</u>. To the extent permitted by law, you will pay us any costs and fees we reasonably incur to collect amounts you owe us." (McCarthy Decl, Ex. A, at 7.) Brown's TCPA claim alleges that the attempts to collect were illegal. The ability to collect on an unpaid contract is "related to" that contract and, here, that is all that is required for the claims against DIRECTV to fall within the scope of the arbitration clause. Similarly, because the UCL claim relies on and is derivative of the TCPA claim, it too "relates to" the Agreement.

**2. The TCPA Claims Are Not Excluded**

Brown also argues that the TCPA claims are explicitly excluded from arbitration in paragraph 9(d) of the Agreement. That paragraph excludes "any dispute involving a violation of the Communications Act of 1934, 47 U.S.C. § 605, the Digital Millennium Copyright Act, 17 U.S.C. § 1201, the Electronic

Communications Privacy Act, 18 U.S.C. §§ 2510-2521 or any other statement or law governing theft of service." (McCarthy Decl., Ex. A, at 9.) Brown urges the Court to read this language to exclude six different items, each separated by a comma: "The Communications Act of 1934," as well as "47 U.S.C. § 605," and so forth. Brown argues that because the TCPA's provisions are contained within the modified Communications Act of 1934, TCPA claims must be excluded.

To construe the plain language of the contract, a court must take into account the context of a sentence as a whole. *Am. Small Bus. League v. U.S. Small Bus. Admin.*, 623 F.3d 1052, 1054 (9th Cir. 2010) ("[A] purported plain-meaning analysis based only on punctuation is necessarily incomplete and runs the risk of distorting a statute's true meaning." (quoting *U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 454, 113 S.Ct. 2173, 124 L.Ed.2d 402 (1993))). Paragraph 9(d) excludes three specific provisions of the three laws named in the clause pertaining to theft of service. To read it otherwise would imply that the clause repeatedly alternates between a highly broad exclusion and a single section contained within the previous broad exclusion. Such a construction would be nonsensical. Moreover, it would render each statement of the particular section superfluous and, where possible, a court must give effect to every word of phrase within a contract. *United States v. 1.377 Acres of Land, More or Less, situated in City of San Diego, Cnty. of San Diego, State of Cal.*, 352 F.3d 1259, 1265 (9th Cir. 2003)("Courts interpreting the language of contracts 'should give effect to every provision,' and 'an interpretation which renders part of the instrument to be surplusage should be avoided.'" (quoting *Appalachian Ins. Co. v. McDonnell Douglas Corp.*, 214 Cal. App. 3d 1, 12, 262 Cal. Rptr. 716, 721 (1989))). Finally, the phrase "any *other* statement or law governing theft of service" implies that the first three are also laws governing theft of service. The TCPA is not about theft of service and thus it is not excluded.

## C. The Arbitration Clause Is Enforceable

Brown next argues that the arbitration clause is unenforceable because it is unconscionable and the disputes at issue are not arbitrable. The Court finds neither argument convincing in this case.

### 1. The Arbitration Clause is Not Unconscionable

"Under California law, a contractual provision is unenforceable if it is both procedurally and substantively unconscionable. *Kilgore II*, 2013 WL 1458876, at *7 (quoting *Armendariz v. Found. Health Psychcare Servs., Inc.,* 24 Cal. 4th 83, 99 Cal. Rptr. 2d 745, 6 P.3d 669, 690 (2000)). In analyzing these two elements, courts utilize a sliding scale: "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id*. (quoting *Armendariz*, 24 Cal. 4th at 114). "Procedural unconsionability focuses on the factors of surprise and oppression. . . ." *Id.* (quoting *Harper v. Ultimo*, 113 Cal. App. 4th 1402, 1406, 7 Cal. Rptr. 3d 418 (2003)). "Substantive unconscionability focuses on the one-sidedness or overly harsh effect of the contract term or clause." *Id.* (quoting *Harper*, 113 Cal. App. 4th at 1407). Regardless of how heavily the scale tips in favor of one element, both must be present to some degree for an agreement to be unconscionable. *Id*. (citing *Armendariz*, 24 Cal. 4th at 114).

#### a. Procedural Unconscionability

"Procedural unconscionability pertains to the making of the agreement; it focuses on the oppression that arises from unequal bargaining power and the surprise to the weaker party that results from hidden terms or the lack of informed choice." *Ajamian v. CantorCO2e, LP*, 203 Cal. App. 4th 771, 795, 137 Cal. Rptr. 3d 773 (2012) (citing *Dotson v. Amgen, Inc.*, 181 Cal. App. 4th 975, 980, 104 Cal. Rptr. 3d 341 (2010)). Any contract of adhesion is minimally procedurally unconscionable, but absent other indicia of oppression or surprise, a contract of adhesion has only a low degree of procedural unconscionability. *Id*. at 796 (citing *Dotson*, 181 Cal. App. 4th at 981-82).

No other such indicia appear here.  DIRECTV does not contest that the contract was adhesive, and thus minimally procedurally unconscionable, but that is the extent of the oppression or surprise.  Brown had at least two opportunities – the initial order and equipment installation – to review the Agreement and reject it with no penalty.  Both times Brown assented to the terms of the Agreement.  During the online order, Brown was presented with a hyperlink, in underlined blue text, which led to the Agreement's terms.  This hyperlink appeared in a small box which he could not help but look at in order to complete the order.  In the Equipment Lease, the arbitration provision appears immediately above the signature line.  Once again, Brown would have had to make an effort to *avoid* seeing it.

Moreover, even if Brown could meaningfully object that he was not given the Agreement's full terms to read directly, both the online form and the Equipment Lease contained separate arbitration provisions alerting Brown that he would be bound by arbitration generally and that the rules are set out in the Agreement.  Brown cannot at this point suggest that he was surprised by the arbitration clause.

### b. Substantive Unconscionability

"Substantive unconscionability addresses the fairness of the term in dispute." *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 997 (9th Cir. 2010) (quoting *Szetela v. Discover Bank*, 97 Cal. App. 4th 1094, 1100, 118 Cal. Rptr. 2d 862 (2002)) (internal quotation marks omitted).  It arises when an agreement "imposes unduly harsh, oppressive, or one-sided terms," *Ajamian*, 203 Cal. App. 4th at 797, or "reallocates risks in an objectively unreasonable or unexpected manner," *Morris v. Redwood Empire Bancorp*, 128 Cal. App. 4th 1305, 1317, 27 Cal. Rptr. 3d 797 (2005) (quoting *Jones v. Wells Fargo Bank*, 112 Cal. App. 4th 1527, 1539, 5 Cal. Rptr. 3d 835 (2003)) (internal quotation mark omitted).  The paramount consideration in assessing substantive unconscionability is mutuality.  *Pokorny*, 601 F.3d at 998 (quoting *Abramson v. Juniper Networks, Inc.*, 115 Cal. App. 4th 638, 657, 9 Cal. Rptr. 3d 422 (2004)) (internal quotation marks omitted).  Agreements to arbitrate will be substantively unconscionable if they do not contain at

least "a modicum of bilaterality." *Id.* (quoting *Abramson*, 115 Cal. App. 4th at 657) (internal quotation marks omitted).

In addition, a provision in an adhesion contract that does not fall within the reasonable expectations of the weaker or "adhering" party is substantively unconscionable and will not be enforced against him. *Thompson v. Toll Dublin, LLC*, 165 Cal. App. 4th 1360, 1372-73, 81 Cal. Rptr. 3d 736 (2008) (citing *Armendariz*, 24 Cal. 4th at 113); *see also Parada v. Superior Court*, 176 Cal. App. 4th 1554, 1573, 98 Cal. Rptr. 3d 743 (2009) ("Substantive unconscionability may be shown if the disputed contract provision falls outside the nondrafting party's reasonable expectations." (citing *Gutierrez v. Autowest, Inc.*, 114 Cal. App. 4th 77, 88, 7 Cal. Rptr. 3d 267 (2003))).

Given the arbitration provision's low degree of procedural unconscionability, Brown must make a substantial showing of its substantive unconscionability to render it unenforceable. *Dotson*, 181 Cal. App. 4th at 981. Several courts have already examined DIRECTV's arbitration provision and found that it is not substantively unconscionable. *See, e.g.*, *In re DirecTV Early Cancellation Fee Mktg. & Sales Practices Litig.*, 810 F. Supp. 2d 1060, 1069 (C.D. Cal. 2011)[4]; *Stachurski v. DirecTV, Inc.*, 642 F. Supp. 2d 758, 773 (N.D. Ohio 2009); *Bischoff v. DirecTV*, Inc., 180 F. Supp. 2d 1097, 1112 (C.D. Cal. 2002); *Hodsdon v. DirecTV, LLC*, C 12-02827 JSW, 2012 WL 5464615, at *6 (N.D. Cal. Nov. 8, 2012). Brown argues that these earlier decisions did not consider the three[5]

---

[4] *In re DirecTV* was abrogated by *Kilgore v. KeyBank, Nat. Ass'n ("Kilgore I")*, 673 F.3d 947, 960, (9th Cir. 2012), which was in turn vacated by *Kilgore II*, 2013 WL 1458876 at *5.

[5] Brown raises six factors, but the third, fifth, and sixth are not unconscionability arguments. (Opp'n to TCPA Mot. to Compel at 23-25.) The third argument is based on an inadvertent error by DIRECTV, claiming the American Arbitration Association is the proper forum, rather than JAMS. DIRECTV corrected this error in its Reply. (Reply to TCPA Mot at 2 n.3, 15.) The fifth is an argument that after the contract expires, Brown should be released from its terms, but the ability to collect on payments owed is certainly not something that vanishes upon cancellation of a contract and, similarly, the arbitration clause does not vanish. The sixth argument raises California Code of Civil Procedure § 1281.2, which allows a state court to refuse to compel arbitrartion if there is a third party involved in the suit, who will not have its claims arbitrated. As Brown concedes, however, the California procedural rules do not apply to this federal action.

factors he puts forth, and that together these factors amount to substantive unconscionability. The Court addresses each of these factors *seriatim.*

### i.  Mutuality of the Arbitration Provision

Brown claims that the provision lacks mutuality because DIRECTV may engage in "self-help" by recouping early termination fees via his credit card on file. This "self-help" component of the Agreement, however, has nothing to do with the arbitration clause. The text is clear that neither party may initiate a formal dispute without first attempting informal resolution, and both parties must arbitrate all claims relating to the contract, except those explicitly excluded. The arbitration provision contains perfect symmetry. The purported "self-help" remedy applies only to one conceivable claim – whether a customer is entitled to early cancellation – but that claim is settled by the Agreement itself, which stipulates the cancellation fee. (McCarthy Decl., Ex. A, at 7-8.) Brown thus agreed to the cancellation fee as part of the Agreement, so it is debatable whether it is "self-help" at all. For example, nothing prevents the consumer from cancelling the credit card on file to foil DIRECTV's easy access to recovery of the cancellation fee. "Further, substantive unconscionability requires more than a contract that sometimes favors the drafter. Even if the Customer Agreement skews in favor of Defendant in some respects, the terms of the Arbitration Clause regarding litigating certain claims cannot be categorized as 'overly harsh.'" *In re DirecTV* 810 F. Supp. 2d at 1069 (quoting *Pokorny,* 601 F.3d at 997).

### ii.  Exceeding a Reasonable Consumer's Expectations

Brown next argues, citing this Court's order in *Lima*, that if the "sweeping scope of the . . . arbitration provision exceeds a consumer's reasonable expectations, it is substantively unconscionable. *Lima*, 886 F. Supp. 2d at 1183 (citing *Bruni v. Didion*, 160 Cal. App. 4th 1272, 1295, 73 Cal. Rptr. 3d 395 (2008)). The provision here, however, has a narrower reach than the provision in *Lima*, for which the Court observed that it would be "difficult to imagine any dispute . . . that would lie outside its bounds." The "relating to" language in this provision, on the other hand, is quite standard. *See Cape*

-16-

*Flattery*, 647 F.3d at 922 (discussing the "absence" of "relating to" language, implying that it appears with regularity). Brown suggests that including the TCPA claims within the scope of the arbitration clause defies a consumer's reasonable expectations, but as discussed above in connection with *Jiffy Lube*, such a contention is incorrect.

### iii. Confidentiality

Next, Brown points out that the requirement of confidentiality is a basis to find unconscionability. He quotes *Lima* again, wherein this Court stated that "[a]lthough facially neutral, confidentiality provisions usually favor companies over individuals." *Lima*, 886 F. Supp. 2d at 1185 (citing *Ting v. AT&T*, 319 F.3d 1126, 1151 (9th Cir. 2003)). Full confidentiality which is unilaterally imposed can be problematic because "[a] company requiring arbitration under a confidentiality agreement 'place[s] itself in a far superior legal posture by ensuring that none of its potential opponents have access to precedent while, at the same time, [it] accumulates a wealth of knowledge on how to negotiate the terms of its own unilaterally crafted contract.'" *Id*. (quoting *Ting*, 319 F.3d at 1152). The confidentiality required by this provision, however, is different from that in *Lima*. JAMS Rule 26, to which Brown cites, only requires confidentiality on the part of the arbitrator and JAMS, not the parties themselves. JAMS Rule 26, *available at* http://www.jamsadr.com/rules-comprehensive-arbitration/#Rule 26. The concern over confidentiality is mitigated where the parties to arbitrations are free to speak or to mutually negotiate for confidentiality as a term of a settlement.

### 2. Brown's Claims Are Arbitrable

#### a. TCPA Claim

Brown contends that TCPA is a statute that codifies privacy torts and, as such,, TCPA claims are not arbitrable. Brown cites little authority for this proposition beyond the observation that "a tort claim is not arbitrable just because it would not have arisen 'but for' the parties' agreement." *Cape Flattery*, 647 F.3d at 924 (quoting *Tracer Research Corp. v. Nat'l Envtl. Servs. Co.*, 42 F.3d 1292, 1295 (9th Cir. 1994)). While this is undoubtedly true, it does not explain much about this case. Brown cites *Jiffy Lube*

as the example in the TCPA context—although the marketing text messages in that case would not have occurred and thus the claim would not have arisen, "but for" the plaintiff's oil change, that does not make it subject to arbitration. *Jiffy Lube*, 847 F. Supp. 2d at 1262-63. As discussed above, however, *Jiffy Lube* found that the particular claim in question was far too attenuated from and unrelated to the oil change arbitration clause, not that TCPA claims are somehow excluded from arbitration as a whole. Indeed, as discussed above, many courts have compelled the arbitration of TCPA claims involving collection calls. *See, e.g.*, *Cayanan*, 2013 WL 784662; *Coppock*, 2013 WL 1192632; *McNamara*, 2012 WL 5392181. Unlike the situation in *Jiffy Lube*, the TCPA claim here is actually "related to" the Agreement. Thus, the TCPA claim is subject to arbitration.

### b. UCL Claim

Brown also argues that the UCL claim, as an action for a "public injunction," is not arbitrable under California law. Prior to *Concepcion*, the California Supreme Court held that suits for public injunctions, such as UCL claims, were not subject to arbitration. *Cruz v. PacifiCare Health Sys., Inc.*, 30 Cal. 4th 303, 307, 133 Cal. Rptr. 2d 58 (2003); *Broughton v. Cigna Healthplans of Cal.*, 21 Cal. 4th 1066, 1080, 90 Cal. Rptr. 2d 334 (1999). Last year, the Ninth Circuit considered the *Broughton-Cruz* rule in light of *Concepcion*. *Kilgore I*, 673 F.3d 947. In *Kilgore I*, the Ninth Circuit held that *Concepcion* had overruled the *Broughton-Cruz* doctrine. The Ninth Circuit then accepted the case for rehearing *en banc*. In *Kilgore II*, the court vacated its earlier decision, instead ruling that the suit at issue did not qualify as a suit for public injunction because it sought to resolve a private dispute rather than a public wrong. *Kilgore II*, 2013 WL 1458876, at *5. The court declined to reach the question of whether *Concepcion* ruled that the FAA preempts the *Broughton-Cruz* rule. *Id.*

Although *Kilgore I* is no longer binding law, *Concepcion* is. *Concepcion* held that "[w]hen state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA." *Concepcion*,

131 S.Ct. at 1747. It is of no moment that *Broughton-Cruz* was a judicially created doctrine arising out of equitable principles; *Concepcion* itself invalidated a similar judicially created policy in California barring arbitration clauses that did not allow for class actions. *Id.* (abrogating *Discover Bank v. Superior Court*, 36 Cal. 4th 148, 30 Cal. Rptr. 3d 76(2005)). "Thus, because the *Broughton-Cruz* rule prohibits the arbitration of a particular type of claim, claims for injunctive relief, the *Broughton-Cruz* rule is preempted by the FAA." *See Miguel v. JPMorgan Chase Bank, N.A.*, CV 12-3308 PSG (PLAx), 2013 WL 452418 at *10 (C.D. Cal. Feb. 5, 2013) (agreeing with *Kilgore I*). Applying the reasoning in *Concepcion*, as this Court must, the UCL claim is arbitrable.

## V.
## CONCLUSION

In light of the foregoing, DIRECTV's motions to compel arbitration are **GRANTED**. Brown and DIRECTV are hereby **ORDERED** to proceed to arbitration in accordance with the terms of the Agreement. All claims against DIRECTV are dismissed without prejudice. *See Sparling v. Hoffman Constr. Co.,* 864 F. 2d 635, 638 (9th Cir. 1988). Plaintiff's claims against all other Defendants shall proceed in accordance with the Court's Scheduling and Case Management Order issued concurrently herewith.

**IT IS SO ORDERED**.

DATED:   June 26, 2013

DOLLY M. GEE
UNITED STATES DISTRICT JUDGE